Commonwealth ex rel. Hickey *v.* Hickey,
Appellant.

Argued September 12, 1968.  Before WRIGHT, P. J.,
WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING,
and HANNUM, JJ.

*Marvin Comisky*, with him *Dale J. Penneys, Joseph J. Zapitz,* and *Blank, Rudenko, Klaus & Rome,* for appellant.

*Ward F. Clark,* for appellee.

OPINION BY HOFFMAN, J., November 14, 1968:

This case involves the custody of four minor children, Stefano J. Hickey, III, age 13, Kathryn Hickey, age 12, George Hickey, age 7, and Janice Hickey, age 3.

Mr. and Mrs. Stefano J. Hickey, Jr. were married on October 23, 1954 and moved to Warminster Township in Bucks County in 1958. The marriage was apparently a happy one until 1966. On November 2, 1966, Mrs. Hickey moved to an apartment in Warminster, taking the four children with her. It is clear that at that time Mr. Hickey sought the return of his wife and children. Moreover, as the lower court stated: "It is also apparent from the record that the parties exercised perhaps an unusual degree of intelligence and maturity in working out the father's visitation rights during that period of time."

In November of 1967, Mrs. Hickey moved with the four children to an apartment in Philadelphia. The two boys were transferred to Philadelphia schools. Janice remained at home. Kathryn, who is a slow, and perhaps retarded child, continued in a special program in the Hart School in Warminster. There was some question, not fully resolved, as to whether Kathryn will be permitted to continue in that class by reason of her residence in Philadelphia. A psychiatrist testifying for the husband stated, however, that he imagined that similar programs were available in Philadelphia.

In November of 1967, Mr. Hickey took the children to his home, ostensibly for a weekend visit, and failed

to return them. Instead he filed a petition under the Marriage Act of June 26, 1895, P. L. 316, §2, 48 P.S. §92, seeking legal custody of the children.

Mrs. Hickey then petitioned the County Court of Philadelphia for a writ of habeas corpus. On November 6, 1967, the Philadelphia Court, ex parte, awarded custody of the children to Mrs. Hickey, pending a full hearing, while the Bucks County Court granted temporary custody to Mr. Hickey. The Supreme Court apparently determined the jurisdictional conflict in favor of Mr. Hickey when it denied Mrs. Hickey's petition for a writ of mandamus.

Subsequently, after a full hearing in Bucks County in April of 1968, the lower court placed the permanent custody of the three oldest children in the father and the permanent custody of Janice, the youngest, in the mother. Visitation rights were similarly provided for both parents. Appeal was taken to our Court. After argument on a petition for supersedeas, we revised the lower court's order by placing the custody of Stefano J. Hickey, III with the father, and the custody of the other three children with the mother. Visitation rights were adjusted correspondingly.

In reviewing the decision of the lower court in custody matters, we give great weight to the opinion of the judge who had the opportunity to see and hear witnesses, parents and children. *Commonwealth ex rel. Bell v. Bell*, 200 Pa. Superior Ct. 646, 189 A. 2d 908 (1963). The basis of the court's decision, however, particularly as expressed in its opinion, must rest on sufficient factual and legal support.

The lower court recognizes that the paramount consideration in any custody case is the welfare of the children. The ability to discuss and determine their best interest, however, is very trying. Accordingly, the courts of this Commonwealth have established various

principles and presumptions to provide guidelines in making this difficult decision. Perhaps the most weighty of these is the recognition that "Unless compelling reasons appear to the contrary, a child of tender years should be committed to the care and custody of its mother, by whom the needs of the child are ordinarily best served." *Commonwealth ex rel. Horton v. Burke,* 190 Pa. Superior Ct. 392, 154 A. 2d 255 (1959). See *Commonwealth ex rel. Thomas v. Gillard,* 203 Pa. Superior Ct. 95, 198 A. 2d 377 (1964).

Even more emphatically, as Judge MONTGOMERY stated in *Commonwealth ex rel. Logue v. Logue,* 194 Pa. Superior Ct. 210, 166 A. 2d 60 (1960), "One of the strongest presumptions in our law is that a mother has a prima facie right to her children over any other person." (p. 215)

The strength of the presumption has been demonstrated, for example, even in those cases where there has been a moral lapse which does not directly involve the care and treatment of the children. *Commonwealth ex rel. Thomas v. Gillard,* supra; *Commonwealth ex rel. Logue v. Logue,* supra.

The lower court recognized this presumption. Yet, its opinion, while reflecting an obvious concern, fails to accord proper weight to this consideration. The court did not find that the mother has an adverse effect on the children. To the contrary, the court found that both father and mother were fit, competent, devoted, loving parents. A quotation from the lower court's opinion amply demonstrates this fact.

"Much testimony was offered on behalf of each party in an effort to show the baser side of the other's character. This testimony will not be reviewed here. As hearing judge, the undersigned has concluded that each of the parties is a fit person, so far as the care and custody of the minor children is concerned.

"A great deal of testimony was offered on behalf of Stefano, Jr. which tended to show that, at one time or another, Jane failed to exercise that degree of surveillance over the children as they were growing up, which most of us, as parents, would deem to be desirable. A great deal of testimony also was offered, on behalf of the children's father, which would tend to indicate that Jane was not the most affectionate of mothers and that little interchange of love and affection was observed between mother and children. From all of the testimony, the writer thinks it is fair to conclude that each party concedes that the other has a reasonable degree of concern about the welfare of the children. Each has adequate living quarters to satisfactorily house the children. The family home is obviously adequate and the apartment rented by Jane in Chestnut Hill Village Apartments has play facilities, living room, dining room, three bedrooms, two bathrooms and a full kitchen. School facilities, except as to Kathy, the slow learner, are reasonably available in the neighborhood of each party. No special class for a pupil such as Kathy is available in Chestnut Hill.

"The mere recitation above of the history of the litigation with which we are here involved should suffice to serve as a testimonial to the fact that each party sincerely desires full custody of the four children. This is perhaps a classic example of the heartbreak that follows a marital separation where children are involved. The children express love for both parents and would desire to have the family unit restored, were this possible."

The lower court does refer to various elements which convinced him to ignore the tender years doctrine. Close scrutiny of these elements reflects their insufficiency.

The court mentions the testimony of Dr. Norman Loux, a psychiatrist who interviewed the children. Dr. Loux testified that the children loved both father and mother and wanted the family to be together. Each stated, however, that if put to the choice, he would choose to live with his father. Dr. Loux believed that the children's responses were spontaneous and that all of the children should remain together with the father.

On cross-examination, however, he stated that his opinion was based on a brief conversation with each of the children. He had never met Mrs. Hickey nor had he asked any of the children about her. He did not ask whether she cooked for them, dressed them or took any interest in their schoolwork and outside activities. In addition, he never met or attempted to meet the housekeeper and various relatives who were to care for the children during Mr. Hickey's absence. He stated further that he had no knowledge of Mrs. Hickey's character, reputation or activities. Finally, he stated that it was possible that his conclusions might have differed if he had met Mrs. Hickey.

The great gaps of information in Dr. Loux's testimony clearly render his expert opinion of limited value. He himself admitted that he had no knowledge of the whole situation. His analysis, therefore, should be accorded but little weight.

Finally, the lower court based its opinion, in part, on the fact that the children expressed their preference to remain with the father. Each of the children acknowledged, however, that he loved his mother, was glad to be with her and wished their parents would live together again. Moreover, they were unable to articulate the reasons for this preference.

The rule is well-established in custody cases, that the expression by a child of a wish to stay with a par-

ticular parent is a factor which should be considered but is not controlling, especially where the child is of tender age. *Commonwealth ex rel. Maines v. McCandless,* 175 Pa. Superior Ct. 157, 103 A. 2d 480 (1954). This rule must be borne in mind in reviewing the order of the lower court. Where the interests of the child will best be served by placing the child with the parent for whom preference has not been expressed, this consideration will prevail.

On this basis, we have reached the following decision with respect to the children.

1. Stefano J. Hickey, III, age 13. The lower court awarded the custody of Stefano to Mr. Hickey. In light of the age of the boy, his expressed desire, and his current need for a male figure in the home to whom he may turn for guidance, we find no error in this award, and affirm it.

2. George Hickey, age 7. The lower court awarded custody of George to Mr. Hickey. We hold, however, that this award negated the presumption that a child of tender years should remain with his mother. In light of the child's age, his stated preference is of little weight and, in our opinion, was insufficient to overcome the presumption. Custody of George, therefore, is awarded to Mrs. Hickey.

3. Janice Hickey, age 3. The lower court awarded custody of Janice to Mrs. Hickey. This award was in conformance with the tender years doctrine and is affirmed.

4. Kathryn Hickey, age 12. The lower court awarded custody of Kathryn to Mr. Hickey. While Kathryn is older than George, and did state her preference for Mr. Hickey, she is, nevertheless, a slow and perhaps retarded, child. Her statements, therefore, should be accorded little weight. Moreover, as a girl reaching puberty, particularly in her condition, she will require

the guidance, sensitivity and patience of her mother. Cf. *Commonwealth ex rel. Horton v. Burke,* supra. Accordingly, custody of Kathryn is awarded to Mrs. Hickey.

The order of the lower court is modified in accordance with the statements set forth herein. Visitation privileges shall be modified accordingly.