## Commonwealth ex rel. Hughes, Appellant, *v.* Foster.

Submitted June 13, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*Frederick S. Wolfson,* and *Egli, Walter, Reilly and Wolfson,* for appellant.

*George E. Christianson* and *Lewis, Brubaker, Whitman & Christianson,* for appellee.

OPINION BY SPAULDING, J., November 16, 1973:

Appellant Betty Lou Hughes appeals from the order of President Judge Thomas GATES of the Court of Common Pleas of Lebanon County awarding custody of her three children to their father. She contends that the tender ages of her children compel the presumption that she, the natural mother, should have custody.

The marriage of appellant and appellee produced three children, now eight, five, and four years of age, whose custody is the subject of this litigation. The couple was divorced in 1971, and both parties continued to reside in Lebanon, Pennsylvania, with appellant given custody of the children in October of that year, subject to the father's weekly visitation privileges and temporary summer custody. Appellant, pursuant to that order, resided with the children at the home of her parents. Appellee went to court several times in the ensuing months to enforce his visitation rights which were apparently being interfered with by the maternal grandparents. Early in 1972,[1] appellant de-

---

[1] Appellee testified that this occurred in February of 1972, when he was already living with the woman who is his present wife.

livered the children over to appellee because, according to appellee's testimony, the children were mistreated by their maternal grandmother, and because appellant could no longer care for them, and wanted her own personal freedom. In June of 1972, appellee married his present wife. The following month, appellant yielded permanent custody of the children, by consenting to an amendment of the original custody order, on the grounds that the appellee had remarried and could "adequately maintain a home for the children."

One month after giving up permanent custody, appellant moved to Colorado Springs, Colorado, and was soon married to Lester Hughes, a member of the armed forces. In March 1973, she returned to Pennsylvania and instituted habeas corpus proceedings to regain custody of the three Foster children.

At the hearing in support of her petition, Mrs. Hughes testified that, in planning for the custody of her children, she and her husband had "arranged" to rent a three-bedroom home in place of their present one-bedroom apartment.[2] Her present husband testified that he had gotten along well with the Foster children during their only meeting and that he wanted them to come to Colorado to live with them. At the end of his term in the armed forces, in 1974, the couple would move with the children to Texas, where he had a civilian job waiting.

Testimony adduced in behalf of the children's father indicated that he has been providing a happy and healthy home life, both materially and spiritually, for his children. Mr. and Mrs. Foster, the three Foster children, and Mrs. Foster's two children from a previous marriage[3] occupy a three-bedroom home in the area where the Foster children were born. Mr. Foster

---

[2] No lease had been drawn up at the time of the hearing.

[3] These two children receive support from their father.

has been employed by the same concern for seven years and earned over $10,000 in 1972.[4] Mrs. Foster is employed as a kitchenware demonstrator. The children appear to have come to regard their stepmother affectionately. They attend church and Sunday school regularly and take part in church and community activities. The pastor of their church testified that they are well cared for in their father's home. Appellant herself conceded that her former husband from whom she seeks to wrest custody, is providing "a good home for the children".

At the conclusion of testimony, the court below refused to disturb the present custody arrangement, with the father's custody remaining intact, subject to appellant's reasonable visitation rights. Given appellant's own corroboration of the fact that Mr. Foster is providing his children with "a good home", the sole basis of her claim to custody rests on the "tender years" doctrine, under which it has traditionally been felt that where parents are separated, children of young ages presumptively "belong" with their natural mother.

The most recent pronouncement of our appellate courts concerning the "tender years" presumption came in *Commonwealth ex rel. Parikh v. Parikh,* 449 Pa. 105, 296 A. 2d 625 (1972). There our Supreme Court wrote: "It is well-settled that the best interest of the child be paramount in contests between parents for custody of minor children. Cochran Appeal, 394 Pa. 162, 145 A. 2d 857 (1958); Com. ex rel. Graham v. Graham, 367 Pa. 533, 80 A. 2d 829 (1951). 'While it is generally held that, other factors being equal, a child of tender years should be with the mother, this rule is by no means absolute. Each case must finally rest upon and be determined by its own facts.' Com.

---

[4] Mr. Hughes' income was roughly the same, although he is paying $1200 a year in support of his previous wife's child.

ex rel. McLeod v. Seiple, 193 Pa. Superior Ct. 131, 136, 163 A. 2d 912 (1960). The mother's right to custody is not absolute, but must yield to the welfare of the child. Com. ex rel. Bell v. Bell, 200 Pa. Superior Ct. 646, 189 A. 2d 908 (1963)."

The "tender years" presumption then, is "merely the vehicle through which a decision respecting the infant's custodial well-being may be reached where factual considerations do not otherwise dictate a different result." *Parikh*, supra, at 109. Given this delineation of the status of this time-honored doctrine, we conclude that the present circumstances dictate a result different from that which would be reached by following the tender years doctrine. The courts should not interfere where the children have been in the custody of their father and stepmother for over a year and have been provided with a healthy and comfortable material and spiritual life. Such a change in custody which would disrupt this life, also has the potential, especially with the planned geographic shifts, to cause psychological harm to the children. See *Parikh*,[5] supra, *Seiple*, supra. We must not confuse the happiness or the presumed right of custody of the mother with the health and welfare of the children. In cases like the present one, the biological mother possesses the burden of persuasion for changing the status quo, rather than the bene-

---

[5] In *Parikh*, the Court foresaw "disturbance of the child's physical and emotional stability" if he were uprooted to India from the father's domicile in Pennsylvania, and cited same as a reason for refusing to grant custody to the mother. Here we have a situation of children having lived all their lives in Pennsylvania being sought by a mother who presently lives in Colorado and who will move to Texas in 1974. While this dislocation is not as drastic as that in *Parikh*, it certainly is not a factor in the mother's favor. We note that here, unlike in *Parikh*, the father enjoying custody is remarried to a woman at least functionally, if not psychologically, regarded as "mother" by the Foster children. In *Parikh*, the father retained custody without being remarried.

fit of a legal presumption.[6] We support the finding of the court below that "it would be wrong" to disturb the present custodial arrangements.

Although not necessary to support the finding that the children should remain in the custody of their father, this conclusion is reinforced by appellant's having voluntarily given permanent custody of them to her former husband in 1972. Private custody agreements are certainly not paramount to the best interest of the child. *Commonwealth ex rel. Bachman v. Bradley*, 171 Pa. Superior Ct. 587, 91 A. 2d 379 (1952). See *Commonwealth ex rel. Bordlemay v. Bordlemay*, 201 Pa. Superior Ct. 435, 193 A. 2d 845 (1963). Wherever possible, however, private resolutions governing domestic relations ought to be given considerable weight in evaluating the intentions of the parties at a particular time, and should be given effect wherever possible without contravening public policy. The action of the court below achieves this result.

The order of the court below is affirmed.

---

CONCURRING OPINION BY SPAETH, J.:

I concur fully with Judge SPAULDING'S opinion but wish to add a comment regarding procedure.

The court below filed no opinion in explanation of its order. Normally I would hold that this failure would require a remand. *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa. Superior Ct. 229, 312 A. 2d 58. Here, however, I do not consider remand necessary.

---

[6] We read *Parikh* approvingly to go a considerable distance toward displacing the traditional "tender years" burden on the father to show "compelling reasons" why the biological mother should not have custody. Even in these traditional terms, however, the instant history of excellent paternal care should, in terms of the children's welfare, be viewed as a "compelling reason" for the laying aside of the claimed maternal presumption.

442

In *Grillo* the transcript was over 200 pages and revealed a complex family history. There was no doubt that the mother was vigorously going forward in presenting evidence. The subtle issue of conflict of lifestyles and the hearing judge's possible reaction to this conflict was raised on appeal. Further, the judge had conferred with the children in chambers and off the record. Without a comprehensive opinion discussing the evidence and explaining the basis of the order, intelligent disposition by this court was not possible. Here, appellant's case consisted of her testimony and her husband's. It covered nine pages of double-spaced typewritten transcript and amounted in substance to no case at all. Appellant did not contradict the evidence that appellee is providing an adequate home for the children. She simply demanded custody because she is the mother.

When a judge is not confronted with a true controversy, as he is not when the plaintiff fails to present any substantial evidence, there is no reason to require a full and comprehensive opinion.