374 A.2d 1386

James O. TOMLINSON, Appellee,

v.

Janet TOMLINSON, Appellant.

Superior Court of Pennsylvania.

Argued March 22, 1977.

Decided June 29, 1977.

Laurence E. Norton, II, Carlisle, for appellant.

John B. Fowler, III, Carlisle, for appellee.

Before WATKINS, P. J., and JACOBS, HOFFMAN, CER-CONE, PRICE, VAN der VOORT, and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order awarding custody of a 13 year old girl, Susan Louise, to her father. Because the

findings of the hearing judge are not supported by competent evidence, we reverse.

## I

Janet and James Tomlinson were married in July, 1961. Their older daughter, Beth Ann, was born in April, 1962; Susan was born in September, 1963. The parents were divorced in November, 1970, and in January, 1971, the mother was awarded custody of the two girls. She has retained custody, for the lower court's awarding custody of Susan to the father, was stayed.

Since the divorce, the mother who does not work, has taken care of both girls, as well as taking care of her 19 year old daughter and 18 year old son from a previous marriage. The father has remarried, and he lives with his new wife, Judith, and her two children from a previous marriage. The father filed the petition for a change of custody only in regard to Susan. Two hearings were held on the petition.

At the first hearing, on January 6, 1976, the father testified that he filed the petition because Susan had expressed her desire to live with him. He explained that he had always had a closer relationship with Susan than with Beth Ann, and that Susan told him that she and her sister "get on one another's nerves." N.T.[1] 5.[1] He had waited to file his petition until his new house was completed, so as to provide Susan with her own bedroom, and so that Susan could settle right into the new community without an additional move. His wife testified that she works 25 hours a week, and is never home later than 4:00 in the afternoon. N.T.[1] 14. The mother testified that the girls share a bedroom, and get along well. She claimed that the father creates the problem between the girls in that he caters to Susan, and that it was not until Susan heard about the new house that she started saying that she wanted to live with her father. The mother also claimed that the father had not exercised his visitation rights to the fullest. N.T.[1] 18–20.

1. N.T.[1] refers to the Jan. 6, 1976, hearing, while N.T.[2] refers to the second hearing, held on June 18, 1976.

Susan was questioned by the judge in chambers with counsel present, and stated that she liked where her father lives better than where her mother lives because it is "more open." N.T.[1] 25–26.

At the second hearing, on June 18, 1976, the father explained that he would try to treat the girls equally in regard to material things, but that he found Beth Ann "a little flaky when it comes to something that is good for her." N.T.[2] 4. When it was pointed out that if Susan were to live with him, he would see less of Beth Ann, the father admitted that he had not really thought about that. N.T.[2] 5–6. The mother testified that she had spoken to Susan to determine the basis of her desire to live with her father, but had been unable to elicit any explanation. She further testified that she worried that separation would lead to problems in the girls' relationship. N.T.[2] 2–3. Susan was again questioned by the judge. Her entire statement was as follows:

Q. [THE JUDGE]: Do you like it in Lemoyne?

A. [SUSAN]: It is okay.

Q. You like to visit with your father?

A. What?

Q. You like to visit with your father?

A. Yes.

Q. You like it where he lives? You like to visit with him in the area where he lives?

A. Yes.

Q. Isn't it a new house?

A. Yes.

Q. Do you want to go live with him?

A. Yes.

Q. You want to visit with your mother?

A. Yes.

Q. What's your reason?

A. I like to be with my father.

Q. Do you have any activities in Lemoyne? School activities?

A. Nothing really.

200

Q. You had good grades this year in school?

A. I guess so.

Q. Don't you want to brag about them?

A. Not really.

Q. You would be satisfied to live with either of your parents wouldn't you?

A. I want to live with my father.

Q. You would prefer that?

A. Yes.

Q. You still want to see your mother though, don't you?

A. Yes.

Q. You want to spend time with her?

A. Yes.

Q. And with your sister? How do you and your sister get along? Okay?

A. Not really.

Q. Many sisters don't. She doesn't do anything wrong does she?

A. She always teases me.

Q. All girls do that.

A. Yeah, but all the time?

Q. Do you swim?

A. Yes. . . .

MR. FOWLER [attorney for the father]: I am satisfied. You talked to her before. I do know that we have the burden of proof and Susan has expressed a desire to live with her father.

THE COURT: Is that correct?

A. Yes.

MR. FOWLER: I assume that you covered that in your questions?

THE COURT: I have but you may ask her.

MR. FOWLER:

Q. Susan, I know you love both your mother and your Dad and that's not the question before the court or before us. Between living with your father and mother permanently who would you rather live with?

A. My father.

Q. Are there any reasons why?

A. I want to be with my father.

Q. Is that a real strong feeling that you have?

A. I just want to live with my father.

N.T.[2] 10–11, 13.

A letter from a clinical psychologist, which was introduced into evidence, concluded that "[t]he two girls are quite independent and do not lean upon one another for emotional support, hence, I conclude that separating them would not be a traumatic experience for either one."

The hearing judge filed a brief opinion (exclusive of the order concerning visitation rights, it consists of three pages) indicating that both the mother and the father's second wife had undergone previous psychiatric therapy, and had both requested further psychiatric evaluations, but that he had decided that it was desirable that Susan's custody be changed right away, to allow her to become acquainted with the new community before the start of school. He therefore ordered the change in custody, provided that the subsequent reports did not indicate a "lack of fitness." The judge concluded his opinion by stating: "Weighing all of the circumstances we feel that a transfer of custody to the natural father at this time is desirable and in the best interests of the child." Lower court opinion at 3.

## II

 "The scope of review of this court in a child custody case is of the broadest type. *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972). Although we will not nullify the fact-finding function of the hearing judge, we are not bound by deductions or inferences made by the lower court from the facts as found. *Commonwealth ex rel. Bowser v. Bowser*, 224 Pa.Super. 1, 302 A.2d 450 (1973); *Commonwealth ex rel. Gifford v. Miller*, 213 Pa.Super. 269, 248 A.2d 63 (1968). We need not accept a finding which has no competent evidence to support it, but are instead required to make an independent judgment

based on the evidence and testimony, and make such order on the merits of the case as to do right and justice. *Commonwealth ex rel. Morales v. Morales*, 222 Pa.Super. 373, 294 A.2d 782 (1972); *Commonwealth ex rel. Johnson v. Pinder*, 217 Pa.Super. 180, 269 A.2d 511 (1970)." *Commonwealth ex rel. Ulmer v. Ulmer*, 231 Pa.Super. 144, 147, 331 A.2d 665, 667 (1974).

—A—

 It is well-settled that the paramount concern in a custody dispute between parents is the best interest of the child. *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 107–8, 296 A.2d 625, 627 (1972); *Cochran Appeal*, 394 Pa. 162, 145 A.2d 857 (1958); *Commonwealth ex rel. Graham v. Graham*, 367 Pa. 553, 80 A.2d 829 (1951); *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973). To determine what is the child's best interest, the judge must focus on the particular facts of the particular case.

Here a father seeks to change the status quo: to take a 13 year old girl out of the home of her mother and sister, where she has lived for the past six years. "We recently said that '[t]here has been increasing attention, both by the courts and in psychiatric and psychological literature, to the importance in custody cases involving [very] young children, of not disrupting an established relationship.'" *Sweeney v. Sweeney*, 241 Pa.Super. 235, 244, 361 A.2d 302, 307 (1976) quoting *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976).

 The only reason the father presents for changing the established relationship is Susan's stated preference. It is true that a child's stated preference may be sufficient to support a conclusion that a change of custody is warranted, *see Carlisle Appeal*, 225 Pa.Super. 181, 310 A.2d 280 (1973), and that as a child grows older more weight should be given to his or her preference. *Williams v. Williams*, 223 Pa.Super. 29, 296 A.2d 870 (1972). However, a bare statement of preference, without more, is of little persuasive value. Susan's testimony, which has been quoted above, reveals only a

13 year old's desires, without the underlying reasons that might persuade one of their validity.

■ Susan stated that she prefers Lancaster because it is "more open", that she likes to be with her father, and that she doesn't get along with her sister because her sister always teases her. Her father's testimony reveals that he has always had a closer relationship with Susan, whom he described as "quick and outgoing," than with Beth Ann, whom he described as "introverted and [with] very little self confidence." N.T.[1] 5. It is evident that the father has allowed his feelings of preference to show in his behavior towards the girls. The girls are teenage sisters who naturally have disagreements; the father's overt preference can hardly help them develop a closer relationship, and has in fact proved divisive. Susan did not express her desire to move until she found out about a brand new house, with her own bedroom, and with other material advantages. Faced with a choice of sharing her room and the affection of her mother, or living with material advantages and a doting father, it is not surprising that she has chosen the latter. The choice should not, however, be left to her.

Susan has lived with her mother and sister for the past six years, and other than the fact that the girls tease each other, there is neither allegation nor evidence that living with her mother has not fulfilled Susan's needs. It is true that the psychologist's letter stated that separation of the girls would not be a "traumatic experience;" but the question is not whether separation would have a negative result, but whether it would have a positive result. What we have here is, on the one hand, the importance of continuity and stability in a child's relationships and the importance of raising siblings together, and on the other, a child's statement that rather than learning to grow up with her sister, learning to share and divide, she wishes to be with a parent who fosters divisiveness. In these circumstances we must conclude that there is no competent evidence to support the finding that Susan's best interest would be served by a change of custody.

—B—

The judge here has failed to provide us with "a full and complete explanation of the reasons underlying his decision, which reasons should be set forth in a complete, comprehensive opinion." *Commonwealth ex rel. Fox v. Fox*, 216 Pa.Super. 11, 17, 260 A.2d 470, 472–3 (1969). Where the judge has failed to file a comprehensive opinion we have on a number of occasions referred the case back to the judge for further review so as to preserve both the rights of the parties to have their case decided by the trier of fact and the interest of the Commonwealth in the welfare of the children, and to allow this court to exercise the "broadest type" of review. *See Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976); *Commonwealth ex rel. Ulmer v. Ulmer, supra; Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973). However, there are situations where the record is sufficiently complete and clear, without the benefit of further explanation, so that a remand is unnecessary. *See Sweeney v. Sweeney*, 241 Pa.Super. 235, 361 A.2d 302 (1976); *Commonwealth ex rel. Foster v. Foster*, 225 Pa.Super. 436, 311 A.2d 663 (1973) (Concurring opinion). This case falls within the latter category. It is clear on the record that Susan's best interest would be served by remaining with her mother.

There is another reason that would make remand inadvisable. The hearing judge has now retired. (It is for this reason, undoubtably, that his opinion, filed shortly before the date of retirement, was insufficiently complete and was rendered before the psychiatric evaluations were filed.) To remand now, therefore, would mean not a remand for completion of the record or for a fuller opinion, but to start the proceedings all over again. Hearings would have to be held again, and once more the girls, and their parents, would be forced to come to court and litigate their differences. To put the children through such proceedings, unnecessarily, would not serve their best interests. Susan should remain with her mother.

The order of the lower court awarding custody to the father is reversed and the case is remanded with instructions to enter an order consistent with this opinion.

WATKINS, P. J., and CERCONE and VAN der VOORT, JJ., join in this opinion.

HOFFMAN, J., files a dissenting opinion.

PRICE, J., files a dissenting opinion in which HOFFMAN, J., joins.

JACOBS, J., dissents.

HOFFMAN, Judge, dissenting:

I agree with Judge PRICE that this case should be remanded for a full hearing and for completion of the record. I also believe that the Majority is in error because it so completely disregards the stated preference of a child of 13 years of age. See *Clair Appeal*, 219 Pa.Super. 436, 281 A.2d 726 (1971); *Commonwealth ex rel. Bender v. Bender*, 197 Pa.Super. 397, 178 A.2d 779 (1962).

PRICE, Judge, dissenting:

I cannot agree with the majority that the record is sufficiently complete and clear, without the benefit of further explanation, so that a remand is unnecessary. My review of the record convinces me that this test is not met and, therefore, I would remand for a full hearing, and by so doing, would also require that the judge provide us with a full and complete explanation of the reasons underlying the decision. This seems to me to be mandated particularly by the fact, as the majority acknowledges, that the decision rendered in the present case was insufficiently complete and, indeed, was rendered before the psychiatric evaluations were filed, and I believe that at the very least that would be a necessary step to the completion of the record.

I am also not satisfied with the efforts to develop the testimony of Susan as to the reasons behind her stated preference.

In any event, based upon this record I am not willing to speculate as to which course of action would be in the best interest of the child and of this family unit.

I would reverse and remand for a new hearing and opinion.

HOFFMAN, J., joins in this dissenting opinion.