426 A.2d 157

**GERALD G., Jr.**

v.

**THERESA G., Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1980.

Filed Feb. 27, 1981.

500

Peter C. Bowers, Philadelphia, for appellant.

Melvin B. Goldstein, Philadelphia, for appellee.

Before SPAETH, BROSKY and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant-mother contends that the lower court erred in awarding custody of her minor child to appellee-father. We are unable, however, to address the merits of her appeal and, instead, remand for further proceedings consistent with this opinion.

This is a dispute over the custody of the parties' daughter, Rebecca, age 6. The parties were separated in October, 1976, and divorced in May, 1977. Both parties have since remarried. Pursuant to an oral agreement, the mother maintained custody of the child and the father regularly visited with the child on weekends. On March 5, 1979, after one such visitation, the father told the mother that he intended to keep the child. On April 2, 1979, the mother removed Rebecca from the day care center where she had been enrolled by her father. The mother then filed a petition for confirmation of custody and a temporary restraining order on May 4, 1979. The lower court granted an order restraining the father from taking the child from the mother's home during the pendency of these proceedings. On June 11, 1979, the father filed a petition for habeas corpus. The lower court conducted a hearing on August 28, 1979, at which the father attempted to prove that the mother was unfit. He testified that the child was usually unkempt, dirty, and in relatively poor health on his weekly visits. Additionally, he alleged that the mother's living arrangements were unsuitable and that she used drugs. The mother denied each of these allegations and contended that the child had a negative reaction to her father's brief period of actual custody. Each parent presented cumulative, corroborative testimony from friends and relatives. The lower court, in the presence of counsel, conducted an examination of the child on the record. Although much of the child's testimony was not responsive to the court's questions, Rebecca expressed a preference for her father and corroborated the father's testimony regarding the mother's drug use. The lower court "did not find that [appellant] was an unfit mother" and "believ[ed] that both parents were capable of loving care for Rebecca . . . ." However, the lower court resolved the issue of credibility in favor of the father and, accordingly, awarded custody to him. This appeal followed.

In *Commonwealth ex rel. Leighann A. v. Leon A.*, 280 Pa.Super. 249, 252, 421 A.2d 706, 708 (1980), we stated:

"It is fundamental that in all custody disputes, the best interests of the child must prevail; all other considerations are deemed subordinate to the child's physical, intellectual, moral and spiritual well being. *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A.2d 625 (1972); *Commonwealth ex rel. Holschuh v. Holland-Moritz*, 448 Pa. 437, 292 A.2d 380 (1972)." *Garrity v. Garrity*, 268 Pa.Super. 217, 221, 407 A.2d 1323, 1325 (1979). "Among the factors to be considered in determining the best interests of the child are the character and fitness of the parties seeking custody, their respective homes, their ability to adequately care for the child, and their ability to financially provide for the child. *Shoemaker Appeal*, 396 Pa. 378, 381, 152 A.2d 666, 668 (1959)." *Kessler v. Gregory*, 271 Pa.Super. 121, 124, 412 A.2d 605, 607 (1979).

In order to ensure that the best interests of the child will be served, the appellate court will engage in a comprehensive review of the record. *Scarlett v. Scarlett*, 257 Pa.Super. 468, 390 A.2d 1331 (1978); *In re Custody of Myers*, 242 Pa.Super. 225, 363 A.2d 1242 (1976). Thus, while it will defer to the lower court's findings of fact, the appellate court will not be bound by the deductions or the inferences made by the lower court from those facts, but will make an independent judgment based upon its own careful review of the evidence. *Sipe v. Shaffer*, [263 Pa.Super. 27, 396 A.2d 1359 (1979)]; *Scarlett v. Scarlett, supra.* In conducting this review, the appellate court will look to whether all pertinent facts and circumstances of the contesting parties have been fully explored and developed. *See Sipe v. Shaffer, supra; Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976). It is the responsibility of the lower court to make a penetrating and comprehensive inquiry, and if necessary, to develop the record itself. *See Commonwealth ex rel. Cox v. Cox*, 255 Pa.Super. 508, 388 A.2d 1082 (1978). After fulfilling this responsibility to ensure a complete record, the court must file a comprehensive opinion containing its findings and conclusions. *See Valentino v. Valentino*, 259 Pa.Super. 395,

393 A.2d 885 (1978); *Gunter v. Gunter, supra.* Only with the benefit of a full record and full opinion can the appellate court hope to fulfill its responsibility of conducting its own careful review. *Valentino v. Valentino, supra.* Where the record is incomplete or the opinion of the lower court is inadequate, the case will be remanded. *See Valentino v. Valentino, supra; Commonwealth ex rel. Forrester v. Forrester,* 258 Pa.Super. 397, 392 A.2d 852 (1978); *Commonwealth ex rel. Cox v. Cox, supra.*

*Lewis v. Lewis,* 267 Pa.Super. 235, 240, 406 A.2d 781, 783–84 (1979).

■ Our ability to review this case is impaired by a deficient record. Each of the competing parties has testified to his/her fitness and the suitability of his/her home, and the father has made serious allegations of the unsuitability of the mother's home. Yet there was no disinterested testimony evaluating the relative environments which the parties could provide. Accordingly, a remand for such supplementation of the record is proper. *See, e. g., Commonwealth ex rel. Leighann A. v. Leon A., supra,* 280 Pa.Super. at 253, 421 A.2d at 708; *J. F. G. v. K. A. G.,* 278 Pa.Super. 25, 28, 419 A.2d 1337, 1339 (1980); *Jones v. Floyd,* 276 Pa.Super. 76, 80, 419 A.2d 102, 104–05 (1980); *Lewis v. Lewis,* 267 Pa.Super. 235, 240, 406 A.2d 781, 784–85 (1979); *In re Custody of Neal,* 260 Pa.Super. 151, 153, 393 A.2d 1057, 1058 (1978); *Gunter v. Gunter,* 240 Pa.Super. 382, 402, 361 A.2d 307, 317 (1976).

■ "In addition to lacking a complete record, we are without the comprehensive opinion necessary for proper appellate review. *Garrity v. Garrity, supra; Lewis v. Lewis, supra.*" *Commonwealth ex rel. Leighann A. v. Leon A., supra,* 280 Pa.Super. at 254, 421 A.2d at 709. While resolving issues of credibility is inherently the province of the lower court, that is not the court's exclusive function in determining custody matters. By focusing on the parents' credibility, the lower court failed to consider numerous relevant issues squarely presented by the current record. *See*

*Commonwealth ex rel. Grillo v. Shuster,* 226 Pa.Super. 229, 237, 312 A.2d 58, 63 (1973) (plurality opinion). For example, the lower court failed to consider the fact that the father allowed the mother uncontested custody of Rebecca for three years after their separation before he sought custody of the child. *See Commonwealth ex rel. Hughes v. Foster,* 225 Pa.Super. 436, 441, 311 A.2d 663, 665 (1973). The lower court also failed to consider the effect that its award of custody would have upon the existing relationship between mother and child. *See id.,* 225 Pa.Super. at 440–41, 311 A.2d at 664. Similarly, the lower court did not address the mother's availability to exercise full time supervision over the child compared to the fact that the father would place Rebecca in child care. *See In re Custody of Neal, supra,* 260 Pa.Super. at 156, 393 A.2d at 1059. Moreover, the lower court discussed the mother's alleged drug use without considering the present effects of such use on the child. *Cf. Commonwealth ex rel. Leighann A. v. Leon A., supra,* 280 Pa.Super. at 253, 421 A.2d at 709 (only present effects of prior acts of child abuse are relevant). Accordingly, the lower court shall, on remand, address itself to *all* relevant facts as they appear at the time of the supplemental proceedings.

■ Because of the deficiencies in the record and the lower court's opinion, we remand with the following instructions. The lower court shall allow the introduction of any additional evidence pertinent to the issue of custody, including, but not limited to, disinterested testimony regarding the suitability of the respective parties' homes.[1] Moreover, the lower court shall allow the parties to supplement the record to reflect any circumstances relating to Rebecca's best interests which may have changed since the August 28, 1979 hearing. Finally, the lower court shall file a comprehensive

1. Having recognized the parties' failure to present disinterested testimony evaluating the parties' homes, we direct that the lower court undertake to have an independent examination of both homes made by an appropriate social welfare agency. *See Lewis v. Lewis, supra* 267 Pa.Super. at 240, 406 A.2d at 784–85.

opinion which thoroughly analyzes the evidence and states the reasons for its ultimate decision.

■ Because our disposition of this case necessitates a remand, we note that when a hearing judge interviews a child in a custody case, certain procedures must generally be met: (1) counsel must be present; (2) counsel must have the opportunity to question the child; and (3) the testimony must be transcribed and made a part of the record. *See, e. g., Commonwealth ex rel. Morales v. Morales,* 222 Pa.Super. 373, 375–76, 294 A.2d 782, 783 (1972).[2] Those procedures are designed to provide this Court with all the necessary information to discharge our responsibility to exercise the broadest type of review. *Commonwealth ex rel. Lee v. Lee,* 248 Pa.Super. 155, 162, 374 A.2d 1365, 1369 (1977). Additionally,

> [i]n determining the best interests of the [child, her] preference, although not controlling, is a factor to be considered as long as it is based on good reasons. . . . In assessing the weight to be accorded the child's preference, [her] maturity and intelligence are to be considered, with increased weight being accorded the preference as the child grows older.

*Commonwealth ex rel. Husack v. Husack,* 273 Pa.Super. 192, 196, 417 A.2d 233, 235 (1979). *See also Gunter v. Gunter, supra* 240 Pa.Super. at 389 n. 2, 361 A.2d at 311 n. 2; *Commonwealth ex rel. Hickey v. Hickey,* 213 Pa.Super. 349, 355, 247 A.2d 806, 809 (1968). Accordingly, the lower court shall determine the appropriate weight to be given to Rebecca's testimony. *See generally,* A. Momjian & N. Perlberger, *Pennsylvania Family Law,* § 5.1.5(b) (1978).

Order vacated and remanded for proceedings in accordance with this opinion. Either party aggrieved by the lower court's ultimate order may then take a new appeal to this court.

BROSKY, J., files a concurring opinion.

2. *See also* Bertin & Klein, *Pennsylvania's Developing Child Custody Law,* 25 Vill.L.Rev. 752, 771–73 (1979–80) (discussing cases and recommending presence of counsel).

BROSKY, Judge, concurring:

I concur in the result reached by the majority. However, there are matters which require additional comment.

To begin with, the majority asserts that the record is deficient because there was no "disinterested testimony evaluating the relative environments which the parties could provide." Although it is not completely clear what is meant by the phrase "disinterested testimony," it may be assumed, based upon prior cases, that it refers to the type of testimony offered by social workers, psychiatrists, doctors, psychologists and other similarly trained personnel. See *J. F. G. v. K. A. G., n/b/m K. A. K.*, 278 Pa.Super. 25, 419 A.2d 1337 (1980); *In re Custody of Neal*, 260 Pa.Super. 151, 393 A.2d 1057 (1978); *Commonwealth ex rel. Cox v. Cox*, 255 Pa.Super. 508, 388 A.2d 1082 (1978); *Gunter v. Gunter*, 240 Pa.Super. 382, 361 A.2d 307 (1976).

The advantage of this type of testimony lies in its objectivity. The disadvantage, however, is that it is costly not only financially but in terms of manpower and time. Having a professional make an evaluation and prepare a report for the court may involve many months of study. Because time is so precious in a child custody case, it is my opinion that this type of testimony should not be sought on remand in every instance, as it may be entirely sufficient in some cases to have the parties themselves provide witnesses who will testify to the type of home environments each party could provide, such as a close neighbor or family physician. I, therefore, propose that where a social worker's testimony would aid the court in its determination, it should be sought on remand; but that where the parties themselves can provide such "disinterested testimony," they should be encouraged to do so.

The majority also asserts that the trial court's opinion was not sufficiently comprehensive for purposes of appellate review. As we have stated in the past, remand is appropriate where the trial court has not made a comprehensive inquiry; where it does not specify the reasons underlying its decision; or where the opinion is not supported by a full

discussion of the evidence. *Commonwealth ex rel. Leighann A. v. Leon A.*, 280 Pa.Super. 249, 421 A.2d 706 (1980); *In re Custody of Hernandez*, 249 Pa.Super. 274, 376 A.2d 648 (1977); *Commonwealth ex rel. Schall v. Schall*, 251 Pa.Super. 262, 380 A.2d 478 (1977).

While I am in agreement that the trial court here should have made every attempt in its opinion to thoroughly analyze and discuss the evidence presented, I feel that the time has come for our court to give some guidance to the trial courts of our state in this regard.

I, therefore, strongly suggest that in child custody cases, the trial court should prepare specific findings of fact, from which its conclusions shall be deduced. As we stated in *Garrity v. Garrity*, 268 Pa.Super. 217, 225, 407 A.2d 1323, 1327 (1979): "Absent . . . the reasoning process employed to reach the ultimate conclusion, this court cannot pass on the fate of a child."

In a child custody case, the trial court should record in its opinion its findings of fact with regard to the following: the fitness of the parties; the home surroundings of the parties; the care and condition of the child; the credibility of the parties; and the probability of the incidents testified to at the hearing. *Veihdeffer v. Veihdeffer*, 235 Pa.Super. 447, 344 A.2d 613 (1975); *In re Custody of White*, 270 Pa.Super. 165, 411 A.2d 231 (1979). Also, where the court has interviewed the child, it should also make and note findings of fact with regard to the child's competency to testify, particularly where the child is of tender years, such as the four-year old child here.

In this case, the opinion does not contain sufficient findings with respect to the probability of the mother's alleged drug use. The court here was not presented with any medical testimony concerning the effects of methadrine, one of the drugs allegedly used by Theresa G. I would direct that expert testimony be sought with regard to the known effects of methadrine, as well as to the effects, if any, that her usage of such a drug would have upon Rebecca.

Finally, the majority states that on remand the trial court should determine the appropriate weight to be given to the child's testimony. I agree that this is necessary, since it appears from the opinion that considerable weight was accorded to her testimony, especially with regard to her mother's alleged drug use, despite the fact that she was found to be "too young to ask questions." Whether a minor child is competent to testify depends upon his or her intelligence and comprehension of the obligation to tell the truth. *Commonwealth v. Allabaugh*, 162 Pa.Super. 490, 58 A.2d 184 (1949). There is no indication here whether the trial judge attempted to ascertain Rebecca's intelligence or her understanding of the obligation to tell the truth before he elicited testimony from her. It is well established that "[C]ourts must clearly indicate the weight given to the child's testimony." *Commonwealth ex rel. Grillo v. Shuster*, 226 Pa.Super. 229, 312 A.2d 58 (1973).

I would hold that while the child's testimony should be transcribed and made a part of the record, it is not mandatory that counsel be present. The majority cites *Commonwealth ex rel. Morales v. Morales*, 222 Pa.Super. 373, 294 A.2d 782 (1972), for the proposition that counsel must be present where a child's testimony is taken by the trial judge out of the presence of the contending parties. In *Morales*, we were confronted with a factual situation in which the trial judge had refused to allow one of the children in question to testify as a witness when called by counsel for the appellee on the ground that the children had already been heard in chambers. No record was made of the children's testimony. We found that the trial court's decision was not supported by the record since the children's testimony was not transcribed and held that in such a situation, "[c]ounsel should be present and have an opportunity to examine them [the children] . . . and their testimony should be on the record." Id., 222 Pa.Super. at 375–376, 294 A.2d at 782, 783.

In *Commonwealth ex rel. Grillo v. Shuster*, supra, our court discussed *Morales*, stating that

[I]n *Commonwealth ex rel. Morales v. Morales* . . . two requirements were specified: that counsel *be permitted to be present* when the children were questioned, so that they could examine the children; and that the children's "testimony should be on the record."

Id. 226 Pa.Super. at 238, 312 A.2d at 63. [Emphasis added.] In *Grillo*, the court noted, counsel had been offered the opportunity to be present when the children were questioned by the trial judge in chambers but had declined.

In *Cheppa v. Cheppa*, 246 Pa.Super. 149, 369 A.2d 854 (1977), we stated that

[N]otwithstanding the language of both *Morales* and *Grillo*, these two cases actually turned on the absence of a record of the children's testimony, *rather than on the absence of counsel while the children testified.* A record was kept in the instant case. Id., 246 Pa.Super. at 151, 369 A.2d at 856. [Emphasis added.]

The opinion went on to state that

[t]he most important consideration for the lower court when attempting to ascertain the true feelings of a child must be to create an atmosphere in which the child will feel free to express himself. *Such a setting is much less likely to exist when representatives of the parents (representatives who are going to repeat what the child has said) are present.* The hearing judge in the case before us made every effort to ask impartial questions, to put the children at ease, and to attempt to determine their true feelings toward their parents. Under the circumstances of this case, *there was no error by the lower court in questioning the children without counsel being present.* Id., 246 Pa.Super. at 151–152, 369 A.2d at 856 [emphasis added].

In *Commonwealth ex rel. Lee v. Lee*, 248 Pa.Super. 155, 374 A.2d 1365 (1977), we were again confronted with a situation in which the child's interview with the judge was not transcribed. In stating that "[t]he hearing judge's failure to comply with the requisite procedure denied counsel

the opportunity to question Kelly Ann . . . ," the reasoning of the *Cheppa* case, supra, is overlooked.

In *Commonwealth ex rel. Scott v. Rider*, 248 Pa.Super. 383, 375 A.2d 149 (1977), a child custody case decided the same day as *Lee*, it was stipulated that counsel would not be present when the hearing judge interviewed the children in question. Although we stated that generally where a child's testimony is to be taken out of the presence of the contending parties, counsel should be present, the opinion focused on the failure to transcribe the interview:

> Although in the instant case it was stipulated that counsel would not be present at the in camera interview of the children, *the failure to transcribe this interview precludes adequate review of the order entered below.* It is evident from the lower court's opinion that the interview with the children was a significant factor influencing its decision.

Id., 248 Pa.Super. at 386, 375 A.2d 151 (emphasis added).

In both *Lee* and *Rider*, therefore, the focus was upon the trial court's failure to have the interview transcribed, resulting in our being unable to adequately review the order entered by the trial court.

I, therefore, submit that the analysis of the *Morales* and *Grillo* cases contained in *Cheppa*, supra, is the proper one. As the *Cheppa* opinion correctly points out, the real issue in all these cases, including *Lee* and *Rider*, is whether there can be proper appellate review where the trial judge interviews a child but does not have the interview transcribed and made a part of the record, thus depriving the appellate court "[o]f all of the information necessary to discharge our responsibility to exercise the 'broadest type' of review" [citing, *inter alia*, the *Grillo* case, supra.] Id. 248 Pa.Super. at 162, 374 A.2d at 1369.

In *Cheppa*, we recognized that when "representatives of the parents," i. e., counsel, are present, the child involved is not likely to feel as free to express himself, and as a result may not tell the judge his true feelings. The rationale behind interviewing the child is negated if the child cannot be honest and forthright with the judge and reveal his true

feelings. For this reason, I submit that it is not proper to assert that in all situations counsel *must* be present since to have such a requirement may do more harm than good. However, in such cases, it is absolutely essential that the interview be transcribed for the record.