**A.O., Appellee,**

v.

**M.O., Appellant.**

Superior Court of Pennsylvania.

Argued June 9, 2004.

Filed Aug. 16, 2004.

Betty Lupo, Norristown, for appellant.

Colleen F. Consolo, Norristown, for appellee.

BEFORE: KLEIN, OLSZEWSKI and KELLY, JJ.

OPINION BY KLEIN, J.:

¶ 1 Father M.O. appeals from Judge Arthur R. Tilson's order dated January 2, 2004, which clarified the custody order of December 17, 2003. The court granted Mother A.O. primary physical custody and shared legal custody of the parties' daughter, born on June 24, 1992. Judge Tilson thoroughly evaluated all the factors in this case and considered the best interests of the Child. We agree with Judge Tilson and affirm.

¶ 2 Father's claims essentially boil down to two issues: whether it was improper to allow the Child to remain with Mother and attend Girard College, a boarding school (with weekends home) instead of living with Father and his new family in New York State; and whether the court improperly conducted an interview with the Child.

¶ 3 Perhaps this might be a difficult question if Child was not finishing her third year at Girard College and was not close to twelve years old, where she could certainly express her preferences. *See McMillen v. McMillen,* 529 Pa. 198, 602 A.2d 845, 847 (1992) (child's stated preference not controlling, but must be considered in determining child's best interests; weight must be considered in light of maturity and intelligence and is best determined by the trial judge).

¶ 4 Contrary to Father's claim, Mother did not abandon her role in the Child's life because of the decision to enroll her in Girard College. Merely because a parent makes a decision that the best interests of a child would be served by attending an excellent boarding school does not mean that a parent has "abandoned" the child. This is particularly true where the child comes home most weekends and in the summer. In this case, Mother remained active in the Child's life, saw the Child on weekends and in the summer, visited the school during the week, and stayed very much involved in the Child's upbringing.

¶ 5 In the numerous circumstances where both parents work, there is no single way to find the best circumstance for the child. Considering the testimony of the staff from Girard College and the Child's preferences, for this Child in these circumstances we agree with Judge Tilson's conclusion that this situation is in the Child's best interests.

¶ 6 With respect to the questioning of the Child, the parties were present and Judge Tilson asked all the questions posed to him by counsel. It is discretionary with the judge exactly how to elicit truthful information from a child, and the method used by Judge Tilson certainly is within that standard. *See* Pa.R.C.P. 1915.11; *see also Gerald G. v. Theresa G.*, 284 Pa.Super. 498, 426 A.2d 157 (1981) (outlining procedure for questioning in custody cases). This was not a snap decision. It was made after several hearings and a considered evaluation of the best interests of the Child.

¶ 7 Judge Tilson outlined the facts and procedure and the basis for his decision as follows:

Mother and Father where [sic] married in 1991 and then separated in 1994. Father remained in Brooklyn, and currently resides with his new wife, an infant and two other children. Mother and [Child] came to settle in Pennsylvania in 1997. Prior to this Court's most recent orders, Father and Mother shared custody of [Child] according to the terms of an Agreed Stipulation in Custody. The agreement provided Father with custody on the first and third weekends of the month during the school year, and one half of [Child]'s summer vacation.

Father filed a Petition to Modify Custody on March 19, 2003, requesting that this Court grant him primary physical custody of [Child]. After hearings before the Honorable Arthur R. Tilson, this Court entered an Order on December 17, 2003. The Order stated that legal custody of [Child] was to be shared between Mother and Father, and Mother was to have primary physical custody subject to Father's partial custody. The Order provided a schedule for Father's custody, which included the third weekend of every month as well as certain holidays and vacations. However, the Order indicated that in the event that [Child]'s extracurricular activities conflict with one of Father's scheduled weekends, Father would be provided with custody the weekend before or after the scheduled weekend. And finally, as explained in the Clarification Order, [Child] is to be enrolled in Girard College if the Mother chooses to enroll her there.

¶ 8 Although Father raised numerous questions on appeal, essentially he challenges whether Mother's decision to send the Child to boarding school is in the Child's best interests, and whether the judge properly questioned the Child. As Judge Tilson noted, it was clear the parties could not agree on whether the Child should go to boarding school.

¶ 9 With respect to attendance at Girard College, Judge Tilson said the following:

In the instant case, lengthy hearings were held on the issue of whether [Child]'s interests would best be served by her attendance at Girard College. Both parties and two representatives from Girard College testified and were cross-examined. Additionally, the Court held an in camera interview with [Child], in order to better understand her interests and position.

This Court is convinced that Mother's rationale behind her desire to send [Child] to Girard College is based on the Child's best interests and not Mother's unwillingness to be a parent. Throughout her testimony, Mother explained that her preference for Girard College was based on the superior education that it provides, citing that ninety-nine percent (99%) of its graduates go on to attend colleges and universities. (N.T., 12/2/03, pp. 19, 36–40). Additionally, Mother believes that the Child's best interests are served by the numerous extracurricular activities that [Child] has

the opportunity to participate in at Girard College, including choir, sports and horseback riding. Mother testified, and this Court believes, that [Child] is "able to do things [at Girard College] that most parents cannot afford to do for their kids." (N.T. 12/2/03, p. 36). This Court was also impressed with the sincere interest and effort displayed by the Mother in finding a school that best serves [Child]'s interests. The Mother's testimony and evidence revealed that she conducted meaningful research into the public schools in her district and schools in Brooklyn as well (N.T., 11/7/03, pp.140–144). This Court concludes that Mother's decision to send [Child] was based on, and is in, the best interests of the child.

Further, an in camera interview with [Child] has convinced this Court that the Child's interests are best served by attending Girard College. [Child] clearly stated a preference for her mother and a desire to remain enrolled at Girard College. Although the express wishes of a Child are not controlling in custody decisions, they do constitute an important factor which must be carefully considered in determining the child's best interest. *Commonwealth ex rel. Carol Anne Pierce v. Pierce*, 493 Pa. 292, 426 A.2d 555, 559 (1981).

In her interview, [Child] demonstrated an earnest desire and enthusiasm to attend Girard College. [Child] stated that "she loves it there [Girard College]." (N.T., 8/13/03, p.2). [Child] made it clear throughout the interview that she wishes to stay at Girard College, and would "rather go to New York a little less." (N.T., 8/13/03, pp.12, 18). [Child] also indicated that she enjoys a more caring and loving relationship with her mother than with her father (N.T., 8/13/03, pp. 17–18).

The testimony of Calperta Scott, a residential dean at Girard College, pro- vided further evidence that the Child's best interests are served at the school. Ms. Scott has known [Child] well for the last three years and is very familiar with the Child's performance at Girard College. She testified that [Child] "has always been a fantastic student, a model student," who gets along with the other students very well. (N.T., 11/7/03, p. 46). Additionally, Ms. Scott testified that the only time she witnessed [Child] having any social or family difficulties was an occasion when the Child was upset because she wanted to stay on campus for a weekend rather than visit her father in New York. (N.T., 11/7/03, pp.46–47).

Father believes that [Child] should experience family life and not continue at a boarding school. He requests primary custody of [Child] because he believes he can provide a more stable family life for [Child], including interaction with her siblings and other benefits included in family socialization. However, Father provided little evidence of his home in New York or of the actual benefits that [Child] would receive from a move to New York. It should also be noted that Father failed to present his new wife.

Father claims that Mother's enrolling [Child] in boarding school is a reflection of her unwillingness to take part in raising the Child. The Court disagrees with this reasoning. A major part of parenting a Child is deciding how and where to educate your Child, and good parents will put their Children in a place where the Child will have the best opportunity to grow intellectually, physically, morally and spiritually. It is clear from the testimony that Mother made a well-reasoned and thoughtful decision. Based on [Child]'s performance and enthusiasm for the school, it appears that it was a wise decision, and one that this Court will not disturb.

This Court recognizes the important role a Father plays in his daughter's life, however, it is also aware that active participation in extracurricular activities is necessary for a well-rounded education. It is the role of this Court to balance these two important and, in this case, conflicting interests. This Court believes that the flexible visitation schedule set forth in its Order is the best way to accomplish this goal.

As part of the December 17, 2003 order, Father has been awarded physical custody of [Child] the third weekend of each month, from Friday after school until Sunday. However, if a scheduled weekend visit conflicts with the Child's school activities, Father shall be provided the weekend before or after the scheduled weekend. This paragraph is included in the Order for the Father's benefit, to insure that he is not denied time with his daughter. The Court believes that this arrangement is the best way to avoid conflict and allow [Child] to take full advantage of the opportunities provided by Girard College. Additionally, the order does not prevent Father from attending [Child]'s activities and then bringing her to New York for the remainder of the scheduled visit, or bringing her back early, and remaining to attend her activities.

¶ 10 Father also claims error because the attorneys were not permitted to directly question the Child. As noted by Judge Tilson, during the questioning on August 13, 2003, the Court asked its own questions, but also asked the Child questions at the request of the attorneys. Judge Tilson did at one point ask the attorneys if they had any other questions they wanted him to ask. (N.T., 8/13/03, p. 19). As noted by Judge Tilson in his opinion:

> The Court believed that such an approach was the best way to make [Child] feel comfortable and, in turn, provide candid answers. And so, by allowing

the attorneys to ask the Child questions through the Court, the requirements of Pa.R.Civ.P. 1915.11(b) were met.

¶ 11 We believe Judge Tilson did an excellent job of considering all the issues and providing the parties a full opportunity to be heard. He reached a reasonable and sensible decision and crafted a solution that is fair to both parents and in the Child's best interests.

¶ 12 Order affirmed.