Commonwealth ex rel. Meta, Appellant, *v.*
Cinello.

Argued April 12, 1971. Before WRIGHT, P. J., WAT-
KINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and
CERCONE, JJ.

*Carl Blanchfield,* for appellant.

*Saul Davis,* for appellee.

OPINION BY HOFFMAN, J., June 22, 1971:

This case involves an appeal from an order of the
Court of Common Pleas of Allegheny County denying
appellant partial custody and visitation rights with a
child born on July 16, 1966, claimed by appellant to be
his son. Appellee, the mother, has objected to visitation
by appellant on the ground that her son, although born

during her marriage to appellant, is actually the child of her second husband.

The lower court found that appellant is not the father of the child, and that it would be detrimental to the best interest and welfare of the child to grant visitation rights to appellant. In making this determination, the lower court acted pursuant to the order of this Court, remanding the record for a determination of these issues. *Commonwealth ex rel. Meta v. Cinello,* 217 Pa. Superior Ct. 94, 268 A. 2d 135 (1970).

In reviewing cases involving custody of children, we give great weight to the opinion of the trial judge who had an opportunity to see and hear the parties and their witnesses. *Commonwealth ex rel. Hickey v. Hickey,* 213 Pa. Superior Ct. 349, 351, 247 A. 2d 806, 808 (1968). See *Commonwealth ex rel. Bell v. Bell,* 200 Pa. Superior Ct. 646, 189 A. 2d 908 (1968). However, the lower court must base its decision, particularly as expressed in its opinion, on sufficient factual information duly admitted into evidence and contained in the record. *Commonwealth ex rel. Hickey v. Hickey,* supra.

In deciding the instant case, the trial judge had the benefit of a complete record. This record is consistent with the court's finding that between mid-October and Christmas of 1965, appellee and appellant, though still married, were separated. Appellee testified that it was during this period of separation that the baby was conceived through sexual relations with her present husband. She also testified that she had had no sexual relations with appellant for a year and a half prior to their separation in 1965. This testimony was admitted under authority of *Commonwealth ex rel. Leider v. Leider,* 434 Pa. 293, 254 A. 2d 306 (1969).[1]

---

[1] The fact that appellant was found not to be the father of the child does not bastardize appellee's son because appellee has subsequently married the man the trial judge specifically found was the father of the baby. As our Supreme Court held in *Leider,* the

Additional evidence was presented at the hearings which persuasively demonstrated that appellant is not the father of the child. In this regard, appellee's present husband testified that he is the father of the child and that his son was conceived during the time appellee was separated from appellant. Further, a letter was introduced into evidence written by appellant in which he admitted that the boy was the son of appellee's present husband.[2] The trial court found that the letter "was not written in anger as [appellant] testified but was written explaining circumstances of the conception of the child." Moreover, evidence was introduced on behalf of appellee which showed the results of a sperm test given to appellant in 1963. The diagnosis was aspermia (no sperm).[3]

---

Act of May 14, 1857, P. L. 507, §1, 48 P.S. §167 applies: "In any and every case where the father and mother of an illegitimate child or children shall enter into the bonds of lawful wedlock and cohabit, such child or children shall thereby become legitimated, and enjoy all the rights and privileges as if they had been born during the wedlock of their parents." See the Opinion of Mr. Justice Jones in *Leider*, supra, at 296, 254 A. 2d at 308.

[2] The letter read as follows: "Dear Bettie [appellee], Sorry to have kept you waiting on your check. So here it is now. Better late than never. I've been thinking about what you told me about giving up the baby and I've decided that if you marry Bernie [appellee's present husband] I will give Gary up. After all, he is Bernie's son. The fact that you made an ass out of me has nothing to do with Bernie. But, I'll only give him up if you marry *him*. I don't know when I'll be coming down again, but before I do I'll call and let you know. It'll definitely be on a Tuesday or Wednesday which is my days off. That's all! Bob [appellant]" (Emphasis in original.)

[3] Appellant did not object to the admissibility or the probative value of this evidence. His only objection to the admission of this testimony was that it was being offered as evidence of paternity and that this issue could not be decided without a jury trial. The appellant has not been able to cite nor have we been able to find any authority supporting the position that a jury trial is required in a case such as this.

The trial judge did not believe that appellant or his corroborating witnesses were credible. We cannot find that the judge abused his discretion in this regard. "In custody cases, as in others, the question of credibility is for the trial judge." *Commonwealth ex rel. Bell v. Bell,* supra at 647, 189 A. 2d at 909.

We have carefully examined the entire record and we are convinced that the trial judge's decision was based on sufficient evidence and that appellant has certainly not met his burden of establishing that the finding of the lower court is erroneous or that it is based on error of law.[4] See *Commonwealth ex rel. Bell v. Bell,* Id. at 648, 189 A. 2d at 909.

The order of the lower court is therefore affirmed.

---

[4] Although the lower court has indicated that one of the reasons for his decision that appellant is not the father of the child is because of appellant's refusal to take a blood grouping test, we believe that there is ample evidence to support the court's decision without reaching this issue. Therefore, we do not at this time consider the applicability, if any, of the Uniform Act on Blood Tests to Determine Paternity, Act of July 13, 1961, P. L. 587, 28 P.S. §307.1 et seq.