472 A.2d 220

**COMMONWEALTH of Pennsylvania**

v.

**George F. RITCHIE, Appellant.**

Superior Court of Pennsylvania.

Argued March 31, 1983.

Filed Feb. 3, 1984.

Reargument Denied April 3, 1984.

Petition for Allowance of Appeal Granted Aug. 30, 1984.

558

John H. Corbett, Jr., Public Defender, Pittsburgh, for appellant.

Melinda G. Tell, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before CAVANAUGH, BROSKY and MONTGOMERY, JJ.

CAVANAUGH, Judge:

Appellant George Ritchie was tried by a jury and convicted of rape, involuntary deviate sexual intercourse, incest, and corruption of minors. Post-verdict motions were denied and appellant was sentenced to a term of three to ten years incarceration. The instant appeal followed. For the reasons discussed below, we now vacate the judgment of sentence and remand for further proceedings.

The instant charges arose out of an incident involving appellant's daughter, Jeanette, who was thirteen at the time of trial. Jeanette testified that she was watching television on the evening of June 11, 1979, when appellant entered the room and demanded that she perform oral sex on him "or else." (N.T. at 24.) Jeanette testified that based on past experience, she knew that the "or else" meant that if she did not do as appellant requested, she would be hit. Appellant forcibly removed Jeanette's clothes when she refused to do so and then forced her to commit oral intercourse. He then attempted to have normal intercourse with Jeanette, which caused pain to her. When the incident was over, appellant told Jeanette to go to bed.

Several days later, Jeanette told her cousin about sexual contacts between herself and appellant and the cousin told her mother, Jeanette's aunt. The aunt took Jeanette to the police station.

Appellant denied that he ever sexually molested Jeanette.

■ One of the claims raised by appellant is that the evidence was insufficient to convict appellant of rape. Specifically, appellant alleges that the Commonwealth failed to establish penetration. In reviewing the sufficiency of evidence, we must accept as true all the evidence, and the reasonable inferences therefrom, upon which the factfinder could have based its verdict and then ask whether that evidence, viewed in a light most favorable to the Commonwealth as verdict winner, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Parker*, 494 Pa. 196, 198, 431 A.2d 216, 217 (1981); *Commonwealth*

*v. Stockard,* 489 Pa. 209, 212–13, 413 A.2d 1088, 1090 (1980).

We stated in the recent case of *Commonwealth v. Ortiz,* 311 Pa.Super. 190, 193, 457 A.2d 559, 560–61 (1983), that:

[i]t is quite clear ... that the definition of "sexual intercourse" found at [18 Pa.C.S.A. § 3101] does not specify "penetration of the vagina," but instead specifies "some penetration however slight." ... *Commonwealth v. Bowes,* 166 Pa.Super. 625, 74 A.2d 795 (1950) ... is the only Pennsylvania appellate case specifically delineating what penetration means in this context. That case stated that entrance in the labia is sufficient: "To constitute the crimes of rape there must be penetration, *however slight.* (Res in re, but entrance in the labia sufficient: 44 Am.Jur., Rape, § 3)." *Id.,* 166 Pa.Superior Ct. at 628, 74 A.2d at 796 (emphasis in original). We therefore will not hold that a finding of penetration of the vagina is necessary for the jury to find "penetration however slight ...." ... [P]enetration of the vagina, in essence the father reaches of the female genitalia, is not necessary to find penetration under Section 3101.

■■■ It is clear that the testimony of the victim alone can be sufficient to establish penetration so as to sustain a conviction of rape. *Commonwealth v. Crider,* 240 Pa.Super. 403, 361 A.2d 352 (1976). Jeanette testified that she was lying on her back on the floor and appellant was lying on top of her and that he tried to push his penis into her vagina. This caused her pain and appellant finally desisted and told Jeanette to go to bed. We feel that Jeanette's testimony is sufficient to support a finding of penetration as defined in *Commonwealth v. Ortiz, supra.*[1]

1. We note that Jeanette's testimony regarding oral intercourse would have sustained a verdict of rape as defined at 18 Pa.C.S.A. §§ 3121 and 3101. However, the court in the instant case, pursuant to the Commonwealth request, charged the jury that in order to find appellant guilty of rape, they must find "that there was some penetration, however slight, of the sexual organ of the female by the male." (N.T. 11–9–79 at 348).

Appellant next claims that the trial court erred in allowing Jeanette to testify that appellant had been sexually molesting her three or four times a week for a period of about four years, in spite of the fact that she could not remember the exact dates of any attack other than the one on June 11, 1979.

■ It is clear that "in a prosecution for incest it is 'competent for the commonwealth to introduce evidence of illicit relations between the parties prior to the commission of the specific offense laid in the indictment.'" *Commonwealth v. Buser*, 277 Pa.Super. 451, 455, 419 A.2d 1233, 1235 (1980) (quoting *Commonwealth v. Bell*, 166 Pa. 405, 411, 31 A. 123, 123 (1895), and *Commonwealth v. Leppard*, 271 Pa.Super. 317, 319, 413 A.2d 424, 425 (1979)). Such testimony is relevant to "show a passion or propensity for illicit sexual relations with the particular person concerned in the crime on trial." *Commonwealth v. Buser*, 277 Pa.Super. at 455, 419 A.2d at 1235, (quoting McCormick on Evidence § 190 at 449 (Cleary ed. 1972)). Nor does the fact that Jeanette could not remember the exact dates of previous sexual attacks render the testimony inadmissible. *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369 (1980).

■ Appellant admits that *Commonwealth v. Leppard, supra,* and *Commonwealth v. Buser, supra,* specifically hold that evidence such as that in question is admissible but he contends that these holdings violate his right to confront his accuser, and that they should therefore not be followed. We are not persuaded by his argument and decline to overrule the precedent. There was, therefore, no error in admitting Jeanette's testimony regarding prior sexual attacks.

■ Another claim raised by appellant is that the trial court erred in refusing to permit him to enter into evidence certain letters written by Jeanette to other individuals. The letters were offered for the purpose of showing that Jeanette freely communicated with persons outside her home

and failed to mention either the sexual attacks by her father or the fear she allegedly had of him. Appellant hoped to discredit Jeanette's testimony by raising a question as to why she waited so long to report the sexual attacks which had allegedly been occurring for several years. The trial court held that the letters were not relevant, and therefore refused to admit them in evidence.

"Any analysis of the admissibility of a particular type of evidence must start with a threshold inquiry as to its relevance and probative value." *Commonwealth v. Walzack*, 468 Pa. 210, 218, 360 A.2d 914, 918 (1976).

Determination of the relevancy of evidence offered at trial requires a two-step analysis. It must be determined first if the inference sought to be raised by the evidence bears upon a matter in issue in the case and, second, whether the evidence "renders the desired inference more probable than it would be without the evidence." *Commonwealth v. Stewart*, 461 Pa. 274, 278, 336 A.2d 282, 284 (1975) (citations omitted).

The Commonwealth did not contend that Jeanette had no opportunity to report the sexual molestation at an earlier date or that appellant had prevented her from making any complaint. Jeanette freely admitted that she had numerous and frequent contacts with members of her family and friends during the period of time in question. She explained that she was afraid of her father and stated that she never would have gone to the police if she had not been taken to them by her aunt.

Since Jeanette had already testified as to her freedom to contact others, admission of the letters in question would not have made the desired inference "more probable than it would be without the evidence." McCormick on Evidence § 185 (Cleary ed. 1972). Thus there was no abuse of discretion on the part of the trial court in refusing to admit the letters.

■ Appellant also claims that the trial court erred in permitting the Commonwealth to introduce testimony con-

trary to Jeanette's birth certificate, the effect of which was to bastardize her, in order to support its charge of incest. Helen Ritchie, Jeanette's mother, was permitted to testify that appellant George Ritchie, and not Thomas Bills, whose name appears on the birth certificate, was the natural father of Jeanette. Ms. Ritchie testified that although she was still married to Thomas Bills when Jeanette was born, she had not had sexual relations with him for three years prior to Jeanette's birth. She further testified that appellant was the only man with whom she had had sexual relations around the time of Jeanette's conception and that appellant had admitted not only to her but to the Welfare Department, that he was Jeanette's father. Mr. Bills testified that he had not had sexual relations with Jeanette's mother for at least a year and a half prior to Jeanette's birth, and that appellant had admitted to him that he (appellant) was Jeanette's father. Ms. Ritchie married appellant after obtaining a divorce from Mr. Bills.

Appellant claims that the testimony outlined above should not have been permitted, claiming that "no authority exists for allowing a child to be bastardized in order to prove the crime of incest." (Appellant's Brief at 25).

Appellant ignores the holding of *Commonwealth ex rel. Leider v. Leider,* 434 Pa. 293, 254 A.2d 306 (1969), which says that a child is *not* bastardized by the testimony of the mother and her husband as to their non-access to each other at the time of conception in cases where the alleged father later married the mother, thus legitimizing the child. The testimony in the instant case is clearly admissible under the holding in *Leider. See also, Commonwealth ex rel. Savruk v. Derby,* 235 Pa.Super. 560, 344 A.2d 624 (1975); *Commonwealth ex rel. Meta v. Cinello,* 218 Pa.Super. 371, 280 A.2d 420 (1971).

Finally, appellant claims that the trial court erred in refusing to order Child Welfare Services (hereinafter referred to as CWS) to comply with appellant's subpoena for files pertaining to an examination of the prosecutrix which occurred in 1978. He claims that his sixth amendment right

to confrontation is superior to any claim the state might have regarding the need to maintain the confidentiality of the records.

In September, 1978, Child Welfare Services conducted an examination of Jeanette and her two younger brothers at the Ritchie home. The examination was prompted by a report of child abuse from an unidentified source and was CWS' only contact with Jeanette. Appellant's trial counsel served a subpoena upon CWS requesting that they turn over to him any records pertaining to Jeanette. CWS refused to produce the records based on a statutory provision regarding the confidentiality of the records.[2] Appellant's motion for sanctions was denied after the court reviewed the records *in camera* and found that "no medical records are being held by Child Welfare Services that would be of benefit to the defendant in the case." Appellant contends that his counsel should have been permitted to review the files for himself, or that, at a minimum, he should have been granted access to any verbatim statements made by the prosecutrix contained in the file.

■ Appellant's right of confrontation must be weighed against the state's interest in maintaining the confidentiality of the information in the records. *Davis v. Alaska*, 415 U.S. 308, 319, 94 S.Ct. 1105, 1111–1112, 39 L.Ed.2d 347 (1974). We agree that the need for confidentiality in this case must, to a certain extent, yield to appellant's right of confrontation. But we do not feel that appellant is entitled to examine the entire file kept by CWS. We feel, for instance, that the state's interest in maintaining confidentiality regarding the source of the complaint which triggered CWS' involvement outweighs appellant's right to obtain that specific information which does not appear to be relevant to the instant trial.

**2.** 11 P.S. § 2215(a) states that reports made pursuant to the Child Protective Services Law shall be confidential and shall only be made available to certain enumerated persons or agencies. Under § 2215(a)(5), the reports shall be made available to a court of competent jurisdiction pursuant to a court order.

 In determining what information appellant is entitled to we are guided by the Pennsylvania Supreme Court's holding in *Matter of Pittsburgh Action Against Rape,* 494 Pa. 15, 428 A.2d 126 (1981). The issue in that case was "the extent to which a court presiding over a rape trial may authorize counsel for the accused seeking to impeach the credibility of the complainant to inspect a rape crisis center file containing communications between the complainant and rape crisis center personnel." 494 Pa. at 19, 428 A.2d at 127. The court there recognized the "societal interest" in promoting communications between rape crisis center personnel and persons seeking the center's assistance, but it also recognized the "compelling societal interest in the truth-seeking function of our system of criminal justice." 494 Pa. at 19, 428 A.2d at 127. In order to protect both interests, the court held that upon defense request, a trial court should authorize defense inspection of that portion of the crisis center's file which reflects verbatim statements of the complainant bearing on the facts of the alleged offense.

We realize that the holding in *Matter of Pittsburgh Action Against Rape* is not directly on point. The issue there was whether the common law of Pennsylvania should be expanded to create an absolute privilege for all communications between rape crisis center personnel and their clients. It was not argued that any statute accorded a privileged status to such communications [3] or directed that records relating to such communications be kept confidential. In the instant case, there *is* a statute directing that the records at issue be kept confidential, but there is no claim of an absolute privilege of communications between CWS personnel and the children they investigate. Still, we feel that the competing interests involved in *Matter of Pittsburgh Action Against Rape* are similar to those involved here and we are persuaded that the procedure adopted by the Supreme Court there should also be applied in the instant case. We hold, therefore, that appellant is

---

**3.** We note that subsequent to the decision in *Matter of Pittsburgh Action Against Rape,* a statute was enacted granting rape counseling communications an absolute privilege. 42 Pa.C.S.A. § 5945.

entitled to inspect any portion of CWS' files which reflects statements regarding abuse made by Jeanette to the CWS' worker who examined her.[4]

The procedure employed by the trial court in the instant case was not sufficient to protect appellant's rights in spite of the court's "finding" that the records contained nothing that would benefit appellant. As the Supreme Court stated in *Matter of Pittsburgh Action Against Rape:*

[i]t is not for the trial court to review these statements with an eye toward the utility or permissibility of their ultimate use at trial. . . . "Prior statements may, by themselves or in conjunction with other information known by the defense, open up valuable lines of cross-examination for the defense, even though the statements involve matters not directly relating to a witness' direct testimony . . . . 'Whether the statements of the prosecution's witnesses would have been helpful to the defense is not a question to be determined by the prosecution or by the trial court. They would not be reading the statements with the eyes of a trial advocate engaged in defending a client. Matters contained in a witness's statement may appear innocuous to some, but have great significance to counsel viewing the statements from the perspective of an advocate for the accused about to cross-examine a witness.' "

494 Pa. 15, 28–29, 428 A.2d at 132 (citations omitted).

We do not have the CWS records before us and therefore we are unable to determine whether they contain any statements to which appellant is entitled. We must therefore remand the case for further proceedings. We direct the trial court to review the CWS records *in camera* to determine whether they contain any statements made by Jean-

---

**4.** The CWS examination occurred over a year prior to the incident which is the basis of the charges in the instant case, and it might therefore be argued that anything contained in the file is irrelevant to this trial. We feel, however, that in view of the fact that Jeanette was permitted to testify that the sexual abuse had been going on for about four years, statements made by her regarding abuse at the time of the CWS examination are at least potentially relevant.

ette regarding abuse. If the court determines that there are no such statements, then it should reinstate the judgment of sentence. If the records do contain such statements they should be made available to appellant's counsel, who should then be given an opportunity to argue to the court that the statements could have been used to discredit Jeanette's testimony. *Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978). The Commonwealth should be permitted an opportunity to argue that the court's failure to provide appellant's counsel with the statements prior to trial was harmless error. If the court is not convinced that the statements were irrelevant or that any error was harmless, then it should grant appellant a new trial. *Commonwealth v. Hamm*, 474 Pa. 487, 378 A.2d 1219 (1977). Following the court's ruling, either party may file an appropriate appeal.

In order to preserve the parties' rights to effective counsel and allow appellate review, the entire record reviewed by the court at its *in camera* proceeding should be preserved for appeal. This record may be sealed in order to protect its confidentiality. In addition, counsel should be permitted access to this record in order to argue the relevance of the material in accordance with this decision. Counsel, of course, are permitted access to this record for this purpose only and are otherwise bound by the confidential nature of the material in the record.

Judgment of sentence is vacated and case remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

MONTGOMERY, J., files concurring and dissenting statement.

MONTGOMERY, Judge, concurring and dissenting:

I agree with the majority that appellant is entitled to direct statements made by the victim which appear in the CWS files. I would make a distinction not made by the majority, however, and limit appellant to only those statements bearing on the offense in question, that is, sexual

abuse, rather than permitting inspection and use of statements regarding "abuse" in general.