552 A.2d 279

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**David Sean CARILLION.**

Superior Court of Pennsylvania.

Argued Aug. 17, 1988.
Filed Dec. 22, 1988.

Annette M. Hutchison, Assistant District Attorney, New Castle, for Com., appellant.

Larry P. Gaitens, Pittsburgh, for appellee.

Before CIRILLO, President Judge, and CAVANAUGH, BROSKY, WIEAND, OLSZEWSKI, KELLY, POPOVICH, JOHNSON and MELINSON, JJ.

BROSKY, Judge:

This appeal is taken by the Commonwealth of Pennsylvania from an order granting appellee a new trial after appellee's conviction for multiple counts of indecent assault, indecent exposure, corruption of a minor, statutory rape, involuntary deviate sexual intercourse and other related offenses committed upon a ten year old female victim.

The Commonwealth argues that appellee's non-accessibility to the entire Lawrence County Children's Services (Children's Services) file pertaining to the victim does not warrant the grant of a new trial here. Specifically, the question for consideration before the court *en banc* is whether, pursuant to Article I, Section 9 of the Pennsylvania Constitution, appellee's access to the contents of the Children's Services file is mandated under the circumstances. Due to the unique procedural posture of the instant case, as delineated *infra*, we affirm the order of the trial court awarding appellee a new trial; yet, for reasons appearing below, we decline to hold that appellee's right to inspect the contents of the Children's Services file *in toto* is compelled by Article I, Section 9 of our State Constitution.

## I.

The procedural history leading up to the instant appeal is as follows: Subsequent to formal charge of the above offenses, appellee filed several pre-trial motions. Included among these were a Motion for pre-trial discovery and inspection and a Supplemental Request for omnibus pre-trial relief. In the former Motion, appellee requested, *inter alia,* "[a]ll written or recorded statements and substantially verbatim oral statements" of intended Commonwealth witnesses and "[t]he written and/or recorded statement of [the victim]." Appellee requested in his supplemental prayer for relief, *inter alia,* "access to the records of the [Children's Services] with regard to [the victim] to examine to learn [sic] if she made any statements about abuse concerning [appellee]." Along with this, appellee asserted that "any such statements must be submitted to [him] for possible use for trial...."

Pursuant to this court's decision in *Commonwealth v. Ritchie,* 324 Pa.Super. 557, 472 A.2d 220 (1984), the trial court interpreted the Sixth Amendment right to confront under the Federal Constitution to mean that appellee must be permitted to inspect those portions of the Children's Services file which contain statements made by the victim regarding any alleged abuse by appellee. Consequently, after conducting an *in camera* inspection of the Children's Services file to ascertain the existence of any such statements, a remedy fashioned by this court in *Ritchie,* the trial court, by Order of May 9, 1984, released to appellee's counsel portions of the Children's Services file limited, however, to the victim's verbatim statements of child abuse committed by appellee.

Appellee stood trial and was subsequently convicted by a jury of twenty counts of sex-related offenses. Following conviction, appellee filed post-verdict motions. While disposition of these post-verdict motions was pending, the Pennsylvania Supreme Court, having allowed the Commonwealth's petition to appeal our disposition in *Ritchie, supra,* handed down its decision in that case. *See* 509 Pa. 357, 502

A.2d 148 (1985). This resulted in the issuance of a series of orders by the trial court. The first one, dated January 20, 1986, ruled the Commonwealth to show cause why appellee, through counsel, should not have access to the complete Children's Services file of the victim and, further, why appellee's counsel should not be permitted to argue the utility, if any, of the contents of the file for the purpose of cross-examination or other evidentiary objectives consistent with the Pennsylvania Supreme Court's directive in *Ritchie, supra.*

Subsequently, by Order of March 14, 1986, and with the apparent consent of the Commonwealth, the trial court ordered the Children's Services file relating to the victim to be turned over, all inclusively, to appellee's counsel for examination at his office. The court's order included a caveat to appellee's counsel not to disclose any of the material contained therein to any other person. Appellee's counsel was then ordered to file with the trial court a statement concerning whether or not appellee had been prejudiced at his trial by the non-disclosure of any material in the file.[1] Pursuant to yet another Order dated April 16, 1986, the trial court advised, after reviewing the April 10, 1986 letter submitted by appellee's counsel (*see* note 1, *infra* ) that it would conduct its own *in camera* examina-

---

1. Pursuant to the directive of this Order, appellee's counsel, according to the trial court's opinion, filed a letter dated April 10, 1986, with the court advising that appellee had been prejudiced because of the unavailability of a substantial portion of the Children's Services file prior to his trial.

   The theretofore non-available information particularized by appellee's counsel, as set forth by the trial court in its opinion included, *inter alia,* the revelation that although the victim had undergone a pelvic examination, the results were absent, an admission by the victim to her social worker that she had mixed feelings toward her mother—at times hostile and on other occasions protective—the social worker's impression that the victim's mother had feigned emotional upset at the time of her initial report of abuse to the police and had also given inconsistent statements to her lawyer and to others and the victim's inconsistent statement regarding the duration of her sexual experience with appellee. This letter has not been included as part of the record certified to this court, even though its contents are discussed in the opinion of the trial court and referred to in the trial court's order of April 16, 1986, *supra* in text.

tion of the subject file to determine whether appellee's allegations of prejudice were substantiated. Finally, under Order filed January 16, 1987, the trial court, after *in camera* inspection of the file, granted appellee a new trial. It is from this Order that the Commonwealth has filed its timely appeal.

After the Notice of Appeal had been docketed with this court, the United States Supreme Court filed its decision in *Ritchie, infra,* affirming the Pennsylvania Supreme Court's holding that Ritchie was entitled to know whether the Children's Services file contained information that may have changed the outcome of his trial had that information been revealed to him. However, the High Court disagreed with the breadth of Pennsylvania Supreme Court's mandate permitting access by Ritchie's counsel to the Children's Services file and, therefore, reversed that determination. The Court grounded its holding on the non-applicability of the confrontation and compulsory process clauses of the Sixth Amendment to the United States Constitution to *Ritchie.* *See Pennsylvania v. Ritchie,* 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).

## II.

At this juncture, and in order to complement our own analysis, we deem it useful to delineate the various rationales expressed by the *Ritchie* courts.

## A.

Ritchie was charged with various sex offenses committed against his twelve-year old daughter. During the pre-trial discovery stage of his case, Ritchie sought access by subpoena to the Children's Services records concerning his daughter relative to the current complaint as well as to a medical examination report contained in an earlier, separate report of child abuse. Children's Services refused compliance with the subpoena citing the confidentiality of the records pursuant to the Child Protective Services Law, 11 P.S. § 2201 *et seq.* Ritchie then filed a Motion for sanctions

arguing entitlement to the information in the agency's files "because the file might contain the names of favorable witnesses, as well as other, unspecified exculpatory evidence." *Pennsylvania v. Ritchie, supra,* 480 U.S. at 44–45, 107 S.Ct. at 995. The trial court, without conducting its own independent examination of the file, accepted the assertion of the agency representative that no medical reports existed in the file which would be of benefit to Ritchie. Ritchie then went to trial and was convicted on all counts. He was sentenced to a term of incarceration of three to ten years.

### B.

On appeal from his judgment of sentence to this Court, Ritchie contended that his Sixth Amendment right to confrontation had been violated by reason of the inaccessibility of the contents of the agency file to him for trial preparation. While we agreed that the confidentiality restrictions contained in the Child Protective Services Law (11 P.S. §§ 2214 and 2215) must defer to Ritchie's Sixth Amendment rights, nevertheless, we did not interpret this constitutional provision to authorize the blanket disclosure which Ritchie had sought. Instead, we fashioned a two-step procedure, followed by the trial court here, in which the trial court, on remand, would inspect, *in camera,* the agency file to ascertain the existence or not of verbatim statements (or the equivalent) made by the victim. If such statements were extant, then the trial court was directed to make available to Ritchie's counsel only that part of the agency file containing those verbatim statements (or their likes). This court further directed that the entire agency file be submitted to Ritchie's counsel for the limited opportunity to argue content relevance. The Commonwealth could then counter that the failure to disclose amounted to no more than harmless error.

### C.

The Commonwealth then appealed to the Pennsylvania Supreme Court. That court interpreted Ritchie's Sixth

Amendment confrontation and compulsory process guarantees to encompass comprehensive review of the agency file to search for evidence. The court reasoned:

[W]e are asked for the right to inspect the entire file. The rationale for such a request is the same rationale underlying the right granted in *Matter of Pittsburgh [Action Against Rape*, 494 Pa. 15, 428 A.2d 126 (1981),] to inspect prior statements of a victim or witness. In short, as with prior statements, the eye of an advocate may see connection and relevancy in any material gathered from the victim, other witnesses, or circumstances developed by the investigation of a child. *See also, Commonwealth v. Hamm*, 474 Pa. 487, 378 A.2d 1219 (1977). 'The search for truth' and the quest for 'every man's evidence' so plainly the basis of the Sixth Amendment, and so aptly applied in *Matter of Pittsburgh*, are as applicable to any material as to prior statements. When materials gathered become an arrow of inculpation, the person inculpated has a fundamental constitutional right to examine the provenance of the arrow and he who aims it. Otherwise, the Sixth Amendment can be diluted to mean that one may face his accusers or the substance of the accusation, except when the accuser is shielded by legislative enactment.

509 Pa. at 366–67, 502 A.2d at 153; footnote omitted. Our high court held, as did this court, that the Commonwealth's interest in maintaining the confidentiality of the Children's Services file must transgress neither Ritchie's rights to confront witnesses against him nor to have compulsory process to obtain their testimony. Applying the principles of due process, the court's analysis was as follows:

We agree with appellee [Ritchie] that it would be absurd to read the [Child Protective Services] statute as providing that the records be made available to a court of competent jurisdiction, while denying any use of them to the litigants in a criminal case before such courts. Notwithstanding the trial court's 'finding' that the files contained nothing that would benefit appellee, it is apparent

that appellee was denied the opportunity to have the files reviewed with the eyes and the perspective of an advocate. Neither the confidentiality provision of the Child Protective Services Law nor any other argument yet advanced justifies that denial.

*Id.*, 509 Pa. at 367, 502 A.2d at 153. It then proceeded to direct the identical remedy designed by us, albeit to accommodate its more expansive reading of the Sixth Amendment. In other words, our Supreme Court's mandate required unabridged access of the agency file to Ritchie's counsel, whereupon counsel would be given the opportunity to argue relevance for cross-examination and other evidentiary purposes. The Commonwealth was accorded the corresponding right to assert the harmlessness of any error of nondivulgence.

Acknowledging the impact of the confrontation clause upon the truth-seeking process of a criminal trial, our Supreme Court observed:

The extent to which a criminal defendant can cross-examine the witnesses testifying against him is controlled by the confrontation clause of the Amendment. The purpose of that clause is to provide an accused with an effective means of challenging the evidence against him by testing the recollection and probing the conscience of an adverse witness.

*Id.*, 509 Pa. at 364, 502 A.2d at 152.

. . . . . . . . . .

It is noteworthy, in light of our disposition of the matter at hand, that the appellate courts of this Commonwealth perceived these dual-pronged constitutional guarantees to embrace the pre-trial discovery stage of a criminal proceeding. Conversely, both this court and the Pennsylvania Supreme Court recognized the right to pre-trial discovery to be of constitutional significance.

### D.

The opinion of the United States Supreme Court in *Rit-*

*chie,* analyzed separately the confrontation [2] and the compulsory process clauses of the Sixth Amendment.

### 1.

It rejected the notion adopted by this Commonwealth's highest tribunal that the confrontation clause translated into a constitutionally compelled rule of pre-trial discovery. Instead, the court simply held that the guarantee of the confrontation clause is limited to an accused's trial rights. It does not operate, opined the Court, to mandate pre-trial disclosure of information that might be helpful in trial preparation.

> Nothing in the case law supports such a view. The opinions of this Court show that the right of confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination. See *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970) [.] ...
>
> The ability to question adverse witnesses however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses. *Delaware v. Fensterer, supra,* 474 U.S. [15] at 20, 106 S.Ct. [292], at 295 [, 88 L.Ed.2d 15]. In short, the Confrontation Clause only guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' *Id.* at 20, 106 S.Ct., at 295 (emphasis in original).

**2.** Justice Blackmun departed from the five-Justice majority in the court's discussion of this issue. He spurned the "plurality's effort to divorce confrontation analysis from any examination into the effectiveness of cross-examination." *Id.* 480 U.S. at 61, 107 S.Ct. at 1004. However, he agreed that the remedy fashioned by the plurality (i.e., *in camera* inspection of the file by the trial court) was adequate to address the confrontation dilemma and therefore, on that basis, Justice Blackmun concurred in the judgment.

*Pennsylvania v. Ritchie, supra* 480 U.S. at 53, 107 S.Ct. at 999; all emphasis in text; footnote omitted.

The court concluded its analysis of the confrontation clause with respect to the issue before it by holding that the guarantee would be implicated only if Ritchie had been impermissibly prevented from cross-examining his victim-daughter. Ritchie, however, was accorded the benefit of cross-examining the victim fully. Notwithstanding Ritchie's position and the Pennsylvania Supreme Court's acceptance thereof, the withholding of the agency file did not rise to the level of constitutional dimension.

2.

The United States Supreme Court read the compulsory process clause of the Sixth Amendment to require prosecutorial assistance in uncovering arguably useful information in preparation for trial, viz: names of witnesses and other evidence available to the accused which may be in the file, despite the impediment of a state-created restriction on accessibility—instantly, as well as in *Ritchie*, the statutory confidentiality of the Children's Services file. However, the Supreme Court indicated that the law regarding the applicability of the compulsory process clause to this genre of cases was unsettled, as evidenced in *Ritchie* by the Pennsylvania Supreme Court's conclusion, albeit nebulous, that refusal to disclose the contents the Children's Services file transgressed the bounds of compulsory process. Instead, the United States Supreme Court adopted a due process analysis in determining whether non-production of the agency file to Ritchie hindered his access to favorable witnesses or other exculpatory evidence. It reasoned that since the statute provides for qualified disclosure by court order (see 11 P.S. § 2215(a)(5)), and no contrary state policy is otherwise apparent, due process requires divulgence when a court of competent jurisdiction determines that the material for which production is sought is essential to the accused's defense. The court, however, tempered this directive by concluding that *carte blanche* disclosure of protected information is not appropriate whenever an accused makes a

general claim that the sought-after evidence may be vital to his case.

A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the Commonwealth's files. See *United States v. Bagley,* 473 U.S. [667], at 675, 105 S.Ct. [3375], at 3379[, 87 L.Ed.2d 481]; *United States v. Agurs, supra,* 427 U.S. [97], at 111, 96 S.Ct. [2392] at 2401 [, 49 L.Ed.2d 342]. Although the eye of an advocate may be helpful to a defendant in ferreting out information, *Dennis v. United States,* 384 U.S. 855, 875, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966), this Court has never held—even in the absence of a statute restricting disclosure—that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 [, 10 L.Ed.2d 215], it is the State that decides which information must be disclosed. Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention,* the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance. See *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one").

---

* See Fed.Rule Crim.Proc. 16(d)(2); Pa.Rules [sic] Crim.Proc. 305(E) ("If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule [mandating disclosure of exculpatory evidence], the court may ... enter such order as it deems just under the circumstances").

*Id.* 480 U.S. at 59–60, 107 S.Ct. at 1003; footnote referenced in above quote is numbered "16" in text of case.

### 3.

The remedy devised by the highest tribunal of this Nation differed materially from that contemplated by our Supreme Court. As noted above, the United States Supreme Court

disaffirmed the broad license given to defense counsel by this Commonwealth's highest court to conduct an unchecked search through the prosecution's file. In other words, the Supreme Court rejected the notion embraced by the Pennsylvania Supreme Court that Ritchie's right to evidence in the agency file pivotal to his defense could only be adequately safeguarded by his counsel. Instead, the United States Supreme Court confined disclosure to *in camera* review by the trial court, with the accused retaining the right to apply directly to the court for discovery of any *specific* information contained in the file and to argue its significance to his case. The Supreme Court also imposed upon the trial court an ongoing duty to unveil information deemed immaterial upon initial *in camera* inspection which later becomes critical as the proceedings progress. The court further directed that, on remand, if the trial court were of the opinion, after independent, *in camera* inspection, that the agency file contained information which probably would have changed the outcome of Ritchie's trial, then he must be awarded a new trial. On the other hand, if no information which would fit this probability appeared extant or if the trial court determined that the non-disclosure was harmless, then the trial court would be free to reinstate his conviction.

To summarize, then, the United States Supreme Court disavowed the applicability of the confrontation and compulsory process clauses of the Sixth Amendment to the pre-trial discovery stage of a criminal proceeding, denominating these guarantees, instead, as trial rights designed to thwart improper restriction on the scope of cross-examination.[3]

### III.

While the U.S. Supreme Court's analysis in *Ritchie* buttresses our conclusion that, instantly, appellee's entitle-

---

**3.** In a footnote the United States Supreme Court in *Ritchie* cited Pa.R.Crim.P. 305, which delineates the procedure for obtaining pretrial discovery. *See,* 480 U.S. at 59–60, 107 S.Ct. 1003, *supra* in text at p. 468–470.

ment or not to pretrial disclosure of the Children's Services file for information which he believed *may* have played a pivotal role in the outcome of his trial is governed by a judicially promulgated rule of court rather than by constitutional fiat, we also find support for our position in the jurisprudence of this Commonwealth.

## A.

In *Commonwealth v. Byuss*, 372 Pa.Super. 395, 539 A.2d 852 (1988), the accused, charged with rape, involuntary deviate sexual intercourse and other offenses, had sought, at the pre-trial stage, direct access to medical reports of the victim's psychiatric condition at the time of the incident, including any accounts of the incident which were made part of the said reports. Alternatively, he requested the trial court to conduct an *in camera* inspection of the reports. The trial court did this and concluded that because no exculpatory material relevant to Byuss' defense existed in the file, disclosure was not warranted. Following trial, Byuss was convicted on all charges.

## B.

After the United States Supreme Court had handed down its decision in *Ritchie, supra,* Byuss filed supplemental post-verdict motions alleging that his right to review the various medical reports was guaranteed by Article I, Section 9 of the Pennsylvania Constitution.[4] After he was

4. Article I, Section 9 of the Pennsylvania Constitution provides:
   In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

sentenced, Byuss lodged a direct appeal with this court raising the State constitutional issue.

## C.

Taking cue from the view expressed by the United States Supreme Court in *Ritchie, supra,* that the right to confront and to have compulsory process are trial, not pre-trial, rights, this court, likewise, concluded that Byuss had suffered no constitutional impairment pursuant to Article I, Section 9 of our State Constitution under the circumstances. For a unanimous panel, Judge Wieand wrote:

> These rights [i.e., to review reports, etc.] conferred by Article I, Section 9 of the Pennsylvania Constitution, are also trial rights. They do not guarantee the right to search unsupervised through the Commonwealth's file prior to trial.
>
> A defendant's right to discover materials in the possession of the Commonwealth is determined in Pennsylvania not by constitutional guarantee but by Pa.R.Crim.P. 305. Under this rule, the reports sought to be examined by appellant are not the subject of mandatory disclosure, but are discoverable only at the discretion of the trial court under Rule 305 B(2).

Id. 372 Pa.Super. at 397–399, 539 A.2d at 854–55.

## D.

### 1.

Turning to the matter at bar, we have seen that the trial court scrupulously regarded appellee's post-trial contention that the Children's Services file may have contained some potentially favorable material which might have altered the outcome of his trial. The court examined the file *in camera* after appellee's counsel was given *in toto* access thereto. Based upon its *in camera* review, the trial court concluded that the lack of disclosure prior to trial of certain material contained in the Children's Services file (see note 1, *supra*) so prejudiced appellee that the only appropriate remedy would be the award of a new trial. As in *Byuss,* we

agree that appellee's right to confrontation has been neither compromised nor even implicated under the State Constitution. Moreover, the applicable provision of Rule 305 under which appellee's initial requests fell and which controlled Byuss' pretrial application for discovery of the medical reports states that disclosure is discretionary with the trial court. *See* Pa.R.Crim.P. 305 B(2), *infra.* at note 5. Hence, the procedure set forth in *Pennsylvania v. Ritchie, supra,* and endorsed by *Byuss* that the trial court conduct an *in camera* inspection of the file after which, if the court first determines that the sought-after information is extant and material to the accused's defense may, in its discretion, order the Commonwealth to make such disclosure to the accused is in keeping with the tenor of this Rule. The right here involved stemmed from appellee's initial request for pre-trial discovery pursuant to Pa.R.Crim.P. 305 [5] of what he believed to be significant portions of the file. Upon post-trial *in camera* inspection of the subject file, the trial court determined and we agree, that formerly withheld portions of this file were critical to appellee's defense.

2.

Our decision in *Byuss* is dispositive of the issue of whether Article I, Section 9 of the Pennsylvania Constitution warrants untrammeled pre-trial fishing expeditions of the

**5.** Pennsylvania Rule of Criminal Procedure 305 B(2) referred to in *Byuss, supra,* reads:

(2) Discretionary with the Court: In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pre-trial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy of photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that he request is reasonable:

(a) the names and addresses of eyewitnesses;

(b) all written or recorded statements; and substantially verbatim oral statements, of eyewitnesses the Commonwealth intends to call at trial;

(c) all written or recorded statements, and substantially verbatim oral statements, made by co-defendants, and by co-conspirators or accomplices, whether such individuals have been charged or not;

(d) any other evidence specifically identified by the defendant, provided the defendant can additionally establish that its disclosure would be in the interests of justice.

474

Children's Services files by defense counsel because "the eye of the advocate may see connection and relevancy in any material ..." notwithstanding an independent, *in camera* inspection of the file by the trial court. *Commonwealth v. Ritchie, supra* 509 Pa. at 366, 502 A.2d at 153. Instead, appellee's "interest in a fair trial [can] 'be protected fully by requiring that the [Children's Services] file be submitted only to the trial court for in camera review.' " *Commonwealth v. Byuss, supra* 372 Pa.Super. at 397–399, 539 A.2d at 854, *quoting Pennsylvania v. Ritchie, supra* 480 U.S. at 59–60, 107 S.Ct. at 1003.

### 3.

█ We have no quarrel with the trial court's conclusion that the previously undisclosed material in the Children's Services file may have been helpful to appellee's defense. The import of these heretofore undisclosed statements of the caseworker and the victim's mother gave rise to the possibility that the victim and her mother may have cooperated to "frame" appellee. This determination was made after the trial court's *in camera* inspection of these various statements. We do not, under these circumstances, interfere with the trial court's discretion to award a new trial, absent a manifest abuse of its discretion or the commission of an error of law which controls the outcome of the case. Hence, the trial court properly exercised its discretion by correcting the legal error of non-disclosure in the first instance by granting appellee a new trial.

Rather, the gravamen of our concern with expansively interpreting Article I, Section 9 of the Pennsylvania Constitution to embrace untrammeled defense fishing expeditions for all confidential materials, relevant or not, relating to a victim's reported sexual abuse readily envisions reluctance on the part of sexual abuse victims, child and adult alike, to report these criminal indiscretions to those entrusted to seek recourse in the courts for these hapless victims out of fear that their (the victims') confidences relayed to counsellors, caseworkers and law enforcement officials will be subjected to the unbridled scrutiny of adverse interests.

However, it is strictly upon the peculiar circumstances of this case—the heretofore undivulged information contained in the Children's Services file brought to light by virtue of the trial court's *in camera* inspection of this file—that we are constrained to uphold its Order granting appellee a new trial.

ORDER AFFIRMED.

CIRILLO, President Judge, files a concurring statement.

JOHNSON, J., concurs in the result.

CIRILLO, President Judge, concurring:

I join in the result reached by the majority in this case, however I write separately to emphasize my belief that the Commonwealth's interest in the confidentiality of the information contained in the Children's Services file must yield to the Commonwealth's greater interest in promoting and protecting the defendant's constitutional right to confront and cross-examine witnesses against him. I am in agreement with the Pennsylvania Supreme Court's statement that "[w]he 1 materials gathered become an arrow of inculpation, the person inculpa ed has a fundamental constitutional right to examine the provenance of the arrow and he who aims it." *Commonwealth v. Ritchie*, 509 Pa. 357, 367, 502 A.2d 148, 153 (1985), *aff'd. in part and rev'd. in part, Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). This, in my opinion, is essential to the integrity of the criminal justice system.

Although in *Commonwealth v. Ritchie* the Pennsylvania Supreme Court relied upon the sixth amendment of the United States Constitution, the same result may be reached on independent state grounds. I would recognize a higher level of protection under our state constitution, and allow defense counsel complete access to the Children's Services file. The information must be viewed by the "eye of an advocate." *Commonwealth v. Ritchie*, 509 Pa. at 367, 502 A.2d at 153. "Denial of access to a witness' prior state-

476

ments ... imposes a handicap that strikes at the heart of cross-examination[,]" *Pennsylvania v. Ritchie*, 480 U.S. at 71, 107 S.Ct. at 1009 (Brennan, J., dissenting), and dilutes the search for truth.  To find otherwise would deny counsel the tools of his or her trade and inhibit effective cross-examination.