J-S45029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| M.D. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| A.D. | : | | |
| | : | | |
| Appellant | : | No. 592 MDA 2018 | |

Appeal from the Order Entered February 20, 2018
in the Court of Common Pleas of Schuylkill County
Civil Division at No(s):  S-1551-2011

BEFORE:   PANELLA, J., OTT, J., and PLATT[*], J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 12, 2018**

A.D. ("Mother") appeals from the order entered on February 20, 2018, in the Court of Common Pleas of Schuylkill County, that denied her petition to modify the existing custody order with respect to her daughters, M.R.D. and M.J.D., and her son, T.M.D. (collectively "Children").[1, 2]  Upon review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] M.R.D., M.J.D., and T.M.D. were born in March of 2005, March of 2007, and March of 2010, respectively.

[2] The Honorable Charles M. Miller presided over the underlying custody matter and the subject proceedings.

The record reveals that, in July 2011, M.D. ("Father") initiated the underlying custody matter involving Children, in which he alleged that Mother abused alcohol, *inter alia*.[3]  Following an evidentiary hearing, in January 2012, the trial court awarded Father sole legal and primary physical custody and Mother partial physical custody on alternating weekends from Saturday at 10:00 a.m. until Sunday at 6:00 p.m. and every Wednesday from 5:00 p.m. until 8:00 p.m.  *See* Order, 1/3/12.

In 2013, Mother filed a petition to modify that order, which resulted in an agreed upon order entered on October 6, 2014 ("existing custody order"), granting the parties shared legal custody, Father primary physical custody, and Mother partial physical custody every weekend from Friday after school until Sunday at 5:00 p.m.  Beginning on November 7, 2014, the order awarded Mother partial physical custody every weekend from Friday after school until Monday morning when she returned Children to school.  If school was not in session, Mother returned Children to Father on Monday by 4:00 p.m.

On November 14, 2016, Mother, acting *pro se*, filed a petition to modify the existing custody order, wherein she requested equally shared physical

---

[3] Father is the stepfather of M.R.D., whom he has raised since five months old.  N.T., 1/26/18, at 345.  M.R.D.'s biological father, E.C., has had no custodial rights in more than ten years.  *See* Order, 10/6/14. E.C. was served with the custody complaint, and he remained a party throughout the underlying matter; however, he never participated.  *Id.*

- 2 -

custody. Following custody conciliation conferences, an evidentiary hearing occurred on December 19, 2017, and January 26, 2018, during which Mother and Father were represented by counsel.[4] During the hearing, Mother specifically requested an increase in physical custody to include alternating Mondays overnight. N.T., 12/19/17, at 69. Father requested that Mother's physical custody be reduced to alternating weekends and only on the condition that she does not consume alcohol during her custodial time and provides proper supervision of Children. N.T., 1/26/18, at 407-408.

The testimonial evidence revealed that Mother and Father reside two blocks away from each other in Ashland, Schuylkill County. N.T., 12/19/17, at 21. Mother re-married in May 2014. *Id.* at 64. Father has not re-married but lives alone in his house with Children. Father testified that Paternal Grandmother lives next door, and she assists him with childcare when necessary. N.T., 1/26/18, at 350. In addition, Father's aunt, who resides in the area, and his sister, are available to help him with childcare. *Id.*

_____

[4] Mother testified on her own behalf, and she presented the testimony of Joseph Sheris, Ph.D., who performed custody evaluations of the family in 2014 and 2017; W.F., her babysitter; and A.H., her husband ("Stepfather"). Father testified on his own behalf, and he presented the testimony of L.K., A.N., M.K., and C.M., who are either owners of bars Mother frequented or bartenders in the parties' community; M.B., a customer in one of the bars; B.R. ("Paternal Grandmother"); M.R., paternal great-aunt; P.W. and J.C., Mother's neighbors; and Officer Daniel Weikel. On rebuttal, Mother presented the testimony of J.D. and C.D., her friend and neighbor, respectively, and she and Stepfather testified on rebuttal.

Mother and Stepfather are the biological parents of a female child, age four, and a male child, age two and one-half. Stepfather was honorably discharged from the United States Army in January 2011. N.T., 12/19/17, at 189. He is diagnosed with posttraumatic stress disorder ("PTSD"), anxiety, and depression, for which he is treated with medication. *Id.* at 189, 196. Stepfather has a history of alcoholism, which he described as binge drinking in order to self-medicate. *Id.* at 197. In addition to alcohol, Stepfather testified that, as recently as one to two years ago, he used methadone and cocaine. *Id.* at 197-198. Stepfather has participated in multiple dual diagnosis programs. *Id.* at 199. He attends Alcoholics Anonymous, and he testified that he has been sober from alcohol for approximately four months. *Id.* at 408. He testified that his longest period of sobriety has been six or seven months. *Id.* at 211. In 2014, Stepfather was charged with driving under the influence, which resulted in a sentence of probation for five years, and he has three years remaining on the sentence. *Id.* at 200-201.

Likewise, Mother has been charged two times with driving under the influence.[5] N.T., 12/19/17, at 9. Mother acknowledged that Dr. Sheris accurately reported in his 2017 evaluation, "[Mother] reports that she does not use alcohol at this time. She further explained that she supports her husband's sobriety. . . . 'I prefer to keep alcohol out of our lives now.'" *Id.*

---

[5] Neither the dates of the charges nor the sentences are specified in the record.

at 146. However, Father presented numerous witnesses who were either bar owners, bartenders, or patrons, who testified that Mother and Stepfather were both served alcohol in bars in 2015 and 2016, and that they created disturbances in the bars by arguing aggressively with each other. **See id.** at 246 (Mother "grabbed [Stepfather's] mug of beer and dumped it on his head and slapped him."); N.T., 1/26/18, at 333-334 (Mother was banned from bar for 30 days in 2016, as a result of an argument she had with Stepfather where "she had poured an entire pint glass of Miller Lite over his head."). Father also presented testimony that Mother continued creating disturbances in bars and was intoxicated in 2017. **See id.** at 336-337 (Mother asked to leave a bar on February 9, 2017, "because there was multiple incidents of her just acting out of hand. I mean, being loud, acting suggestive[ly]."). C.M., a bartender, testified that Mother was in the bar on August 6, 2017, with a male friend, not Stepfather. She testified that Mother was "[o]rnery, intoxicated, . . . enough that I had to watch what she was doing and watch how much alcohol she was served." **Id.** at 336. Further, she testified that Mother was in the bar on the evening of August 27, 2017, which was the night before the first day of the new school year. C.M. testified that Mother was there "from around maybe 5:30 until 9 o'clock at night as usual[,] just walking around the bar doing her thing. [Stepfather] was not there with her that day." **Id.** at 335.

In addition, Father presented testimony regarding instances of Mother's lack of appropriate supervision of Children. P.W., Mother's neighbor and a member of Ashland Borough Council, testified that, on May 22, 2016, Mother and Stepfather "were outside fighting all day. . . ." N.T., 1/26/18, at 303. She observed Mother "hitting him, throwing beer at him, punching him. The children were outside screaming, crying. Mommy, don't leave. Don't leave." *Id.* P.W. explained that Stepfather left the property, and Mother followed him, and another neighbor fed Children peanut butter and jelly sandwiches. *Id.* at 303-305. P.W. testified that Mother and Stepfather left the property and went to a bar. *Id.* at 303. Paternal Grandmother testified with respect to the same incident. She testified that she received a telephone call while shopping from a neighbor who told her that Children were alone at Mother's home. *Id.* at 263. Paternal Grandmother went to Mother's home and found Children "on the side of the hill [on Mother's property] crying their eyes out." *Id.* She took Children to her home, which is located across the street from a bar, and Mother exited the bar and took Children from her. *Id.* at 264-265.

P.W. also testified that, more recently, in the summer of 2017, she and her husband were sitting on their front porch and observed Mother in the street outside her home hitting Stepfather, and Stepfather was trying to get away from her. *Id.* at 304. Further, P.W. testified, "After that incident a couple days later, I was at the 9th Street red light; and she was coming up in the green car; and she saw her husband walking on the sidewalk. She drove

on the sidewalk after her husband." *Id.* at 305. P.W. continued on direct examination:

Q. And you watched her do that?

A. I saw her do that.

*Id.*

By order dated and entered on February 20, 2018, the trial court denied Mother's petition for modification, and amended the existing custody order by reducing Mother's partial physical custody to alternating weekends from Friday at 4:00 p.m. to Sunday at 6:00 p.m. and every Wednesday after school until 8:00 p.m. In addition, the order directed, "Mother shall not consume alcohol during her custodial periods nor permit anyone in her household to consume alcohol during her custodial periods." Order, 2/20/18 at 4.

On March 22, 2018, Mother timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In lieu of filing a Rule 1925(a) opinion, the trial court referred this Court to the subject order wherein it analyzed the requisite statutory factors pursuant to Section 5328(a) of the Child Custody Act ("Act"), 23 Pa.C.S. §§ 5321-5340. *See* Order, 4/16/18.

Mother presents the following issues for our review:

I.     Did the trial court abuse its discretion when it failed to consider the twelve-, ten-, and seven-year-old children's preferences when it dramatically reduced their time with their mother?

II. Did the trial court abuse its discretion when it refused to interview the twelve- and ten-year-old children where the Supreme Court has expressed a strong preference for in-chambers interviews, the record is otherwise insufficient to support any weighing of the children's preferences (even if the trial court had considered them), and the law contradicts the trial court's rationalization for its refusal?

Mother's brief at 4.

We review Mother's issues according to the following scope and standard of review:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 2009 PA Super 244, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 2001 PA Super 126, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.
>
> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

> *R.M.G., Jr., supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 2006 PA Super 144, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014). In addition,

> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

The primary concern in any custody case is the best interests of the child. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006), *citing* *Arnold v. Arnold*, 847 A.2d 674, 677 (Pa. Super. 2004).

Pursuant to the Act, *supra*, trial courts are required to consider "**[a]ll** of the factors listed in section 5328(a) . . . when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original); *see also A.V.*, *supra* at 823 (citation omitted) (providing that trial courts shall set forth the mandatory assessment of the Section 5328(a) best interest factors "prior to the deadline by which a litigant must file a notice of appeal"). The statutory factors are as follows:

**§ 5328.  Factors to consider when awarding custody.**

(a)  *Factors.* – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In the subject order, the trial court considered all of the Section 5328(a) factors. The court found that Section 5328(a)(2), (7), and (8) were inapplicable, and it concluded that all of the remaining factors favored Father. The court's conclusions were based on finding that (1) Mother has left Children unsupervised; (2) Mother has been in bars and at times involved in "altercations and outbursts" in various bars; (3) Mother has been involved in domestic disputes with Stepfather while Children have been in her custody; and (4) Stepfather has mental health and alcohol issues "that are concerns for the [c]ourt since he frequently supervises the children." Order, 2/20/18,

at 3-4. The testimony of all of the witnesses in this case support the factual findings of the court.

On appeal, Mother does not challenge the trial court's factual findings or the statutory considerations it found in favor of Father. Rather, she asserts that the court erred in determining that Section 5328(a)(7) was inapplicable; therefore, she asserts that the court erred by not weighing Children's preferences. Mother specifically asserts that the court erred by not interviewing M.R.D. and M.J.D., then ages twelve and ten, in order to learn their preferences. Mother asserts that the Pennsylvania Supreme Court has a strong preference for in-chambers interviews. She asserts that without the interviews, the record "lacked enough information to weigh the children's preferences. . . ." Mother's brief at 15. Finally, she asserts that it was in the best interests of M.R.D. and M.J.D. "to have some input regarding their custody arrangements." *Id.* at 19.

Mother raises for the first time on appeal that the court erred in failing to interview M.R.D. and M.J.D. During the hearing, Mother's counsel expressly agreed on the record in open court with the court's decision not to interview the youngest child, T.M.D., then age seven. N.T., 1/26/18, at 504. Further, when the court decided not to interview the middle child, M.J.D., Mother's counsel did not object. *Id.* at 505. In deciding not to interview the oldest child, M.R.D., the court stated, "we'll take [her preference] for what it's worth in . . . Dr. Sheris's report," wherein she stated she wanted to spend more time

with Mother.[6]  N.T., 2/1/18, at 509.  Mother's counsel responded, "[D]o you think maybe [M.R.D.] could add anything with regard to supervision issues since, you know, Mother and Father are both saying totally opposite things?" *Id.* at 510.  The trial court concluded, "I don't think it's going to make a difference.  We're just going to have to see what we already have in the record.  I don't want to put her in the middle of that, especially in seventh grade. . . ." *Id.*  Thereafter, Mother's counsel did not object.

Pa.R.A.P. 302(a) provides that, "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."  This Court has explained:

> [i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court.  Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.  In this jurisdiction . . . one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

---

[6] Dr. Sheris testified that he interviewed Children, and that M.R.D. "wanted to have more time with her mother.  It wasn't that she was not liking her father or . . . was against her father, but she did seem to have a very strong desire to have a better or longer relationship with her mother, and she expressed that over time with me."  N.T., 12/19/17, at 36.  With respect to M.J.D., Dr. Sheris testified, "I think she liked the way things were [regarding the custody schedule]." *Id.* at 41.  Dr. Sheris did not testify regarding the preference of the parties' son, T.M.D., but he stated, "I think [T.M.D.] is probably the closest with his father." *Id.*

***Thompson v. Thompson***, 963 A.2d 474, 475-476 (Pa. Super. 2008) (quoting

***Hong v. Pelagatti***, 765 A.2d 1117, 1123 (Pa. Super. 2000)). Because Mother

did not specifically object to the trial court's decision not to interview M.R.D.

and M.J.D., her argument on appeal is waived.

Even if not waived, we would conclude that Mother's argument is without

merit. The trial court determined that it was not in Children's best interest in

this case for them to be interviewed in chambers. ***See*** N.T., 2/1/18, at 508-

512. The Pennsylvania Rule of Civil Procedure governing interviews of children

at custody hearings provides, in part, "The court *may* interview a child,

whether or not the child is a subject of the action, in open court or in

chambers." Pa.R.C.P. 1915.11(b) (emphasis added). As such, the Rule does

not mandate that trial courts interview children who are the subjects of a

custody matter.[7] Therefore, Mother's argument that the court erred in failing

to interview M.R.D. and M.J.D. would fail.

In this case, the trial court stated on the record in open court that it

would consider M.J.D.'s preference stated to Dr. Sheris to spend more time

---

[7] Further, the Rule provides, "Unless otherwise directed by the court, the child who is the subject of the action shall not be required to attend a hearing before the court or a conference." Pa.R.C.P. 1915.11(c). Therefore, the Rule does not even mandate a child's presence during a hearing or a conference. The explanatory comment to the Rule explains, "the presence of a child in court is not always necessary or desirable. The experience may be traumatic and disruptive. Consequently, the child should not be required to attend a hearing or conference in every case." Pa.R.C.P. 1915.11 (Explanatory Comment).

with Mother. N.T., 2/1/18, at 510. To the extent that it disregarded her preference in light of the competent record evidence in favor of Father, the court did not abuse its discretion. ***See A.V.***, ***supra*** (stating that we defer to the findings of the trial court on issues of credibility and weight of the evidence); ***Tomlinson v. Tomlinson***, 374 A.2d 1386 (Pa. Super. 1977) (concluding that, in light of other factors favoring custody of the mother, trial court's overemphasis of the thirteen-year-old female child's preference for her father was in error). Because the record supports the trial court's factual findings, and the court's decision to reduce Mother's partial physical custody to alternating weekends and every Wednesday after school until 8:00 p.m. is reasonable in light of those findings, we affirm the custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/12/2018

- 15 -